## JULIA ENGEBRETSON v. EVELYN AUSTVOLD. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, GARNISHEE.[1]

March 12, 1937.

No. 31,057.

*Murphy, Johanson & Winter,* for appellant.
*John I. Davis* and *Joe McNitt,* for plaintiff-respondent.

STONE, JUSTICE.

Plaintiff, mother of defendant, claiming to have been injured by her daughter's negligence in the operation of an automobile, sued defendant, and after trial without a jury got judgment for $2,500 and costs. State Farm Mutual Automobile Insurance Company of Bloomington, Illinois, had insured defendant against public liability. For the reason hereinafter considered, among others, it declined to defend the action brought by plaintiff. Garnished by plaintiff on account of its supposed indebtedness to defendant, the issue of its liability was tried, the decision went against it, and the garnishee appeals from the order denying its alternative motion for amended findings or for a new trial.

[1]Reported in 271 N. W. 809.

The insurance policy issued by the garnishee excluded liability for injury to "persons in the same household as the assured [defendant], or those in the service or employment of the assured, whether occurring during the hours of such service or employment or not."

Condition precedent to the decision was the finding of fact that "there is no evidence to sustain the claim of said garnishee that at the time of the said accident [April 23, 1933] * * * the said plaintiff was a person in the same household as the said defendant." The only basis for that finding, assigned in argument for respondent here or disclosed by our own search of the record, is that at the trial, as a witness in her own behalf and under the lash of self-interest, defendant testified that she did not "intend to make the home" of her father and mother the place of her own "residence" or to become "a member of the household." She also testified that during the summer of 1933 she intended to go back to Montana.

Defendant Evelyn is one of nine children, born and raised on the farm home of her family near Glenwood. In June, 1931, she married Edwin Austvold and removed with him to Montana, where he had a responsible position with the State Agricultural College. Although residents of Montana during their married life there, the Austvolds had established no separate home of their own. Mr. Austvold met sudden and untimely death February 14, 1933. His remains were returned to Glenwood for interment. His widow, defendant Evelyn, immediately ceased to be a resident of Montana and resumed her residence in Minnesota. Of that there can be no question because she so declared at the time in solemn and unequivocal fashion.

To the probate court of Pope county she applied for appointment as special administratrix of the estate of her deceased husband. In her petition she declared herself "a resident of Glenwood Twp. in the County of Pope, State of Minnesota." That petition she verified personally February 25, 1933. Thereon she invoked and procured judicial action. Letters of special administration were issued to her, as a resident of Pope county, on that petition.

Under date of March 13, 1933, she applied to the secretary of state for an automobile license in her own name in which she declared: "I reside in the County of Pope." What is more, she then had to "affirm under oath" that the family automobile was brought to Minnesota February 17, 1933, as of which date she came to Minnesota "intending to remain here permanently."

In September, 1933, defendant matriculated at the University of Minnesota, giving her home address and legal residence as Glenwood, in Pope county. December 19, 1933, she stated over her own signature as follows: "In April, 1933, I was living with my father and mother on their farm near Glenwood, Minnesota. * * * I lived with my family at Glenwood until September except one month when I was at Chicago. The furniture and things I haven't given away are now at Glenwood at the farm." There is no claim that she signed that document under any deceit as to its contents or effect.

So it is conclusively established by defendant herself that she was a resident of Minnesota during the spring and summer of 1933 and on the day of the accident, April 23, 1933. The remaining question is just where was that residence in this state? Plainly, if in the parental home, defendant was a member of the same household with plaintiff.

For some time defendant taught school near her parents' home and, while doing so, lived there. Until then, nobody could have considered that she was a mere guest in, rather than a member of, her parents' household. Not until she married and went to Montana with her husband did she cease to be a member thereof. If, after her husband's death, she returned and resumed her former place under the parental roof as one of the family, as she did, she automatically again became a member of the household.

She returned to her old bedroom, just as before, with the same sister as her roommate. There was no expectation of her giving or the parents receiving compensation for food or shelter. She reëntered the home and its life, its enjoyments and its labors. There was no distinction, in the matter of privileges, between her

and the two other daughters then at home. If one of the three was not a member of the household, none of them was. At the trial, in response to a question from the court, defendant, with commendable frankness, admitted she was then *living* "in the same house with plaintiff."

If defendant was a resident of Minnesota, as she so solemnly averred to the probate court, secretary of state, and University of Minnesota, she was necessarily a resident in her parents' home. No mere oral denial can shake a fact so established and so buttressed as that is by this record. Defendant's unquestioned and repeatedly asserted residence in Minnesota becomes precisely localized in the family home near Glenwood. Adult and a widow, defendant returned, but as much a daughter of her parents, the householders, as ever. As such she became a member of their household. No mere guest was she, but, for every purpose, a member as before of the Engebretson family, domiciled under the parental roof. If all that did not make her a member of the household nothing could.

There is not much disagreement in the definitions of "household," whether they emanate from judges or lexicographers. The word is synonymous with "family" but broader, in that it includes servants or attendants, "all who are under one domestic head; persons who dwell together as a family." 30 C. J. 474. For other definitions of "household" see Rydstrom v. Queen Ins. Co. 137 Md. 349, 112 A. 586, 14 A. L. R. 212; 4 Wd. & Phr. (3 ser.) 28; 4 Wd. & Phr. (1 ser.) 3361.

There is no excuse for giving the policy limitation which controls decision any undue narrowness, either of construction or application. It is unambiguous. It should be given that fair construction required by its plain language and equally plain purpose. So construed and applied, it requires that the order be reversed with directions for a finding that defendant and plaintiff were members of the same household, and a judgment, in consequence, for the garnishee.

So ordered.

Mr. Chief Justice Gallagher and Mr. Justice Peterson, not having been members of the court when this case was argued and submitted, took no part in its consideration or decision.