**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,**

v.

**Charles BORG and Gillis Borg, Appellees.**

**No. 18966.**

United States Court of Appeals
Eighth Circuit.

June 28, 1968.

Ray G. Palmer of Palmer, Hood, Crassweller & McCarthy, Duluth, Minn., for appellant.

Robert Reutter, of Voorhees & Reutter, Pipestone, Minn., for appellee Charles Borg.

Clint Grose, of Mott, Grose, Von Holtum & Hefferan, Worthington, Minn., for appellee Gillis Borg.

Before MATTHES, MEHAFFY and LAY, Circuit Judges.

MATTHES, Circuit Judge.

The basic issue litigated in the District Court was whether State Farm Mutual Automobile Insurance Company (State Farm) was obligated to pay a judgment obtained by appellee Gillis Borg against appellee Charles Borg, an additional insured under an "omnibus clause" of a policy issued by State Farm. It disclaimed liability on the ground that the protection afforded by its policy of insurance did not apply by virtue of a provision in that policy excluding from coverage bodily injury "to the insured or any member of the family of the insured residing in the same household as the insured."

Mrs. Eva Borg, the named insured, is the mother of appellees Charles and Gillis Borg. The policy became effective January 29, 1963 and provided coverage for bodily injury liability incurred by Mrs. Borg and any other person using the insured automobile with her permission, subject to numerous exclusions including the provision mentioned above. On June 17, 1963, during the effective period of the policy, Charles Borg was operating the automobile with the permission of his mother. Gillis, age 18, was a passenger in the car. As a result of a collision caused by Charles' negligence Gillis sustained bodily injuries. In June, 1966, he brought an action in the United States District Court in Minnesota against Charles for personal injuries arising out of the accident. Charles impleaded State Farm by a third party complaint asserting that it was obligated under the policy to defend the action and satisfy any judgment obtained by Gillis.

The trial resulted in a verdict in favor of Gillis against Charles for $20,000. The District Court entered judgment on the verdict, and, in response to a special interrogatory propounded to the jury,[1] further adjudged that State Farm pay the amount of that judgment plus an attorney's fee in the amount of $2,500. State Farm has appealed.

The sole issue for our determination is whether the District Court erred in denying State Farm's motion for a directed verdict offered at the close of all the evidence and its motion for judgment notwithstanding the verdict. State Farm contends that the evidence established as a matter of law that Gillis Borg was a member of the family of Eva Borg and was residing in her household at the time of the accident, and that consequently the issue of State Farm's liability should not have been submitted to the jury.

---

[1]. The District Court submitted to the jury the following question: "Was Gillis Borg a member of the family of Eva Borg, residing in the same household as Eva Borg?" The answer was "No."

In resolving whether a submissible case was made against State Farm, we view the evidence and the inferences to be reasonably drawn therefrom in the light most favorable to the prevailing party. The Minnesota Supreme Court has held that where the evidence so overwhelmingly preponderates in favor of a party so as to leave no doubt as to the factual truth, and where it would be clearly the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence, a party is entitled to a directed verdict as a matter of law, even though there is some evidence which, if standing alone, would justify a verdict to the contrary. McCormick v. Malecha, 266 Minn. 33, 122 N.W.2d 446, 450 (1963), and cases cited therein.[2]

The facts as disclosed by the evidence stand largely undisputed. Mrs. Eva Borg, a widow since 1947, had resided at 414 Fifth Avenue Southeast in Pipestone, Minnesota, for a period of thirty-two years. Since her husband's death she has been the sole owner of the home and all of its furnishings. Since 1947 she has also been continuously employed as a teacher in the Pipestone Public School System.

Her son, Gillis, graduated from high school in Pipestone in 1962. During that summer he worked in the Pipestone area, and spent a couple of weeks with a crop spraying outfit in Brookings, South Dakota. He resided almost exclusively at his mother's home, and ate most of his meals there.

In September, 1962, he registered as a freshman at South Dakota State University in Brookings, South Dakota, where he lived in a college dormitory. He paid non-resident tuition, which was substantially higher than resident tuition. He defrayed part of his college expenses by working as a waiter in a local cafe. He paid the remaining expenses from his savings, a National Defense loan, and contributions from his mother. In June, 1963, at the end of his freshman year in college, Gillis arranged for and rented an apartment in Brookings for the next school year, and deposited one half month's rent as a downpayment.

On June 7, 1963, he returned to his mother's residence in Pipestone, bringing all of his clothes and personal belongings with him. Two or three days prior to his departure he made arrangements with a contractor in Pipestone to work during the summer as a carpenter. With the exception of a short period of disablement following the accident he worked from about June 8 or 9 until September 20, 1963, at which time he again returned to Brookings, South Dakota. On his employee's withholding exemption certificate from the contractor, dated June 15, 1963, Gillis stated that his home address was "414 5th Av SE., Pipestone, Minn."

During the 1963 summer vacation he slept in the same bedroom as before, used all the household conveniences and had free run of the house. He bought his own groceries, cooked and ate the majority of his meals in his mother's home. He sometimes laundered his clothes there; at other times he used the local laundromat. At no time during his stay in Pipestone did Gillis pay room or board to his mother.

A few days prior to the accident Mrs. Eva Borg left her Pipestone residence for a vacation trip to her sister's cottage

---

**2.** In Dick v. New York Life Insurance Co., 359 U.S. 437, 444–445, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959) the Supreme Court observed that the question whether a state or federal test controls on the issue of the sufficiency of the evidence to support a jury verdict where federal jurisdiction rests on diversity of citizenship remains unsettled. Mercer v, Theriot, 377 U.S. 152, 156, 84 S.Ct. 1157, 12 L.Ed.2d 206 (1964); Farmers Co-operative Elevator Association Non-Stock of Big Springs, Nebraska v. Strand, 382 F.2d 224, 228 (8th Cir. 1967), cert. denied, 389 U.S. 1014, 88 S.Ct. 589, 19 L.Ed.2d 659 (1967). Since the parties appear to rely on the Minnesota test, we will apply it here, particularly since Minnesota applies substantially the same standard as the federal courts. Cf. O'Hare v. Merck & Company, 381 F.2d 286, 288–289 (8th Cir. 1967).

in Deerwood, Minnesota, about 300 miles from Pipestone. She stayed there during most of the summer, except for one or two weeks after the accident. She returned to Pipestone in the fall to resume her teaching position.

On the day of the accident Gillis and Charles had been working for the contractor outside Pipestone. The collision occurred during their return trip to their mother's home.

On June 18, 1963, the day after the accident, Gillis signed a written statement in which he stated:

"Report of Gillis Borg, age 18, born Nov. 28, 1944, single and live at 414 5th Ave. S.E. in Pipestone with my mother, Eva and my brother Charles."

The evidence further discloses that Charles' residence during the time of the accident was also at Pipestone, Minnesota. His status was, in most respects, identical to Gillis' except that he spent most of his spare time with his fiancee, and generally ate his meals at her apartment.

Provisions excluding from bodily injury coverage "the insured and members of his family residing in the same household" have been held valid and effective to protect the insurance carrier against claims for injuries resulting to persons within the specified class. The Supreme Court of Minnesota in Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N.W.2d 855 (1953), 50 A.L.R.2d 108, generally recognized as a leading case, considered all aspects of an exclusion provision identical to the one under consideration here. Justice Knutson, for a unanimous Court, stated: "The obvious purpose of the clause here involved is to exempt the insurer from liability to those persons to whom the insured, on account of close family ties, would be apt to be partial in case of injury." Id. at 862. Accord, Johnson v. State Farm Mutual Automobile Ins. Co., 252 F.2d 158, 161–162 (8th Cir.1958); State Farm Mutual Automobile Ins. Co. v. Briscoe, 245 Md. 147, 225 A.2d 270, 271 (1967); LeRoux v. Edmundson, 276

Minn. 120, 148 N.W.2d 812, 814 (1967); Dressler v. State Farm Mutual Automobile Ins. Co., 52 Tenn.App. 514, 376 S.W.2d 700, 702 (1963). We do not doubt that the present lawsuit initiated by Gillis against his brother comes within the spirit of the policy exclusion. Our task, however, is to determine whether this record presents an issue of fact as to the applicability of the exclusion clause.

Appellees attempt to nullify the effect of the family exclusion clause with a two-prong approach. They argue initially that the facts negative the conclusion that Gillis was a member of a "family" or "household," since there was no domestic head who actually resided at and maintained the home at the time of the accident. Secondly, they submit that the words "residing in the same household" in the exclusion clause imply a more enduring relationship than was manifested here.

Numerous cases have considered the meaning of the terms "family" and "household" as used in insurance policies. The Tomlyanovich Court analyzed each term in depth and pertinently observed that the definition of the word "family" depends to a large extent on the purpose intended to be accomplished by the exclusionary clause in which the word is used. 58 N.W.2d at 858. Buttressed by decisions from a sizeable number of jurisdictions, the Court concluded that the term "family" as used in indemnity insurance contracts was synonymous with "household," except possibly that it was limited to those members of a group having some blood relationship. See also Simon v. Milwaukee Automobile Mutual Ins. Co., 262 Minn. 378, 115 N.W.2d 40, 46 (1962). As late as February, 1967, the Minnesota Court held that stepchildren of the insured were members of the "family" within the meaning of a policy excluding coverage "to any member of a family residing in the same household as the insured." LeRoux v. Edmundson, supra. In State Farm Mutual Automobile Ins. Co. v. James, 80 F.2d 802 (4th Cir.1936), a nonrelated boarder who resided about

half of her time at the home of the insured was held to be a member of the household within the meaning of a policy excluding "persons in the same household as the assured * * *."

■ We believe the evidence indisputably points to the conclusion that Gillis was a member of the "family" or "household" consisting of his mother and brother Charles. Certainly Mrs. Borg was not deprived of her domestic capacity as head of the household merely by reason of her temporary sojourn to a vacation retreat for the summer. It is impellingly clear that both Gillis and Charles acknowledged that their mother, despite her absence, was the head of the household. As we suggested in Johnson v. State Farm Mutual Automobile Ins. Co., supra, the term "family" or "household" cannot be so "limited and straitjacketed as always to mean, regardless of facts and circumstances, a collective body of persons who live in one house under one common head or manager." 252 F.2d at 161. Here there was no separate domestic establishment or divided management of the household, but merely the temporary absence of one of the members of the family who was otherwise regarded as its domestic head. Although the family life functioned separately for a time, Gillis nonetheless continuously resided at his mother's house, and freely utilized all its facilities and conveniences. See Teems v. State Farm Mutual Automobile Ins. Co., 113 Ga.App. 53, 147 S.E.2d 20 (1966).

■ Neither are we impressed with the argument advanced by appellees that Gillis' status at the time of the accident was of such a temporary nature as to create an issue of fact whether he was "residing" in the household of his mother. They submit that since Gillis was planning to return to the University at Brookings, South Dakota in the fall of 1963 and had rented an apartment in pursuance of that intent, his residence at his mother's home in Pipestone was merely a temporary arrangement, and therefore outside the ambit of the exclusion clause. We agree that one who enjoyed the status of a visitor in the household of the insured would not fall within the reach of the exclusion clause. See, e.g., Fruchtman v. State Farm Mutual Automobile Ins. Co., 274 Minn. 54, 142 N.W.2d 299 (1966); State Farm Mutual Automobile Ins. Co. v. Hanna, 277 Ala. 32, 166 So.2d 872 (1964); cf. Giokaris v. Kincaid, 331 S.W.2d 633, 86 A.L.R.2d 925 (Mo.1960).

We have carefully examined and considered all authorities cited by the parties and those gleaned from independent research, which involved an identical or similar exclusion provision. In none have the courts permitted recovery where "residence" of some duration has actually been established, even though only a temporary arrangement was intended or a different residence in the future was anticipated. See, e.g., Johnson v. State Farm Mutual Automobile Ins. Co., supra; Rathbun v. Aetna Casualty and Surety Company, 144 Conn. 165, 128 A.2d 327 (1957); Simon v. Milwaukee Automobile Mutual Ins. Co., supra; Dressler v. State Farm Mutual Automobile Ins. Co., supra; National Farmers Union Property & Cas. Co. v. Maca, 26 Wis.2d 399, 132 N.W.2d 517 (1965); cf. American Service Mutual Insurance Co. v. Pugh, 271 F.2d 174 (8th Cir.1959); Buddin v. Nationwide Mutual Insurance Company, 157 S.E.2d 633 (S.C.1967).

Appellees' argument that Gillis was not residing in Pipestone at his mother's home within the meaning of the policy exclusion is tantamount to a declaration that he resided elsewhere. It would be utterly unrealistic, however, to conclude that Gillis' residence at the critical time was still at the University in Brookings, South Dakota. Although he intended to return to Brookings in the fall, his future intention does not negate the present fact of residence in Pipestone. Simon v. Milwaukee Automobile Mutual Insurance Co., supra.

Appellees place considerable reliance on the authority of State Farm Mutual

Automobile Ins. Co. v. Hanna, supra. The facts confronting the Alabama Supreme Court, however, were the converse of the situation here. The insured, Phillip Hanna, twenty years of age, was a third year student at Howard College in Birmingham, Alabama. His parents, including his father—the victim of the accident—resided in East Tallassee, Alabama. At the college, Phillip lived in a dormitory room with a roommate. Like Gillis Borg, he defrayed part of his expenses himself and part by his parents' contributions. During the summer vacation each year, as well as during the Thanksgiving, Christmas and spring holidays, Phillip returned to the home of his parents. The accident in which the elder Mr. Hanna was injured occurred on November 4, 1961, while Phillip had his automobile in the yard of his parents' home. Phillip at the time was on a weekend visit.

On the basis of these circumstances the Supreme Court of Alabama found that Phillip Hanna was "in residence" at Howard College at the time of the accident and that such residence was not abrogated by casual visits to the home of his parents. Of particular significance, however, to the present case, is the following statement by the Court:

"Such visits were nothing more than temporary interruptions of his more permanent residence at Howard College. The same would apply to the Christmas and Spring vacation periods. *We doubt that such rule should apply to the long summer vacation period of several months where a student resumes living with his parents,* nor should such rules apply where a student attends a college or university in the same town or city as his home while he continues to reside in his family home." 166 So.2d at .876. [Emphasis added.]

See also Giese v. Karstedt, 30 Wis.2d 630, 141 N.W.2d 886 (1966); Senn v. State Farm Mutual Automobile Insur-

ance Co., 287 S.W.2d 439 (Ky.1956). Considering all the factual circumstances before us we, like the Court in *Karstedt,* are led to the inevitable conclusion that Gillis had not severed the "household" umbilical cord, and that his residence therefore at the time of the accident was the household of his mother. If, as appellees contend, Gillis was not residing there within the meaning of the policy exclusion, the evidence wholly fails to establish another residence for him.

In summary, a fair appraisal of the evidence in light of the rationale of the above cited cases irrefutably establishes that the conditions of the exclusion provision were fully satisfied. This is manifest from the following uncontroverted facts and circumstances: (1) the filial relationship of Gillis to the insured; (2) his lifelong residence in the home of the insured up to and including the date of the collision; (3) his physical presence in that home; (4) his full, free and unrestricted use of all of the facilities in the home; (5) his two written declarations, shortly before and after the collision, acknowledging that he was residing in the insured's home.

Gillis' conclusionary statement at trial uttered "under the lash of self-interest," Engebretson v. Austvold, 199 Minn. 399, 271 N.W. 809 (1937), over objection of opposing counsel, to the effect that he was residing "temporarily" in the family home does not detract from the fact of his actual residence which is, of course, controlling.

We conclude that under the test announced in McCormick v. Malecha, supra, it was established as a matter of law that Gillis was a member of the family of his mother, Eva, residing in the same household within the meaning of the policy provision, and that the District Court should have granted the motion for judgment notwithstanding the verdict.

The judgment is reversed.