Carlyle PEDERSON, Respondent (49466), Appellant (49761),

v.

ALL NATION INSURANCE COMPANY, Defendant and Third Party Plaintiff, Appellant (49466), Respondent (49761),

v.

STATE AUTOMOBILE AND CASUALTY UNDERWRITERS, Third Party Defendant, Respondent.

Nos. 49466, 49761.

Supreme Court of Minnesota.

May 9, 1980.

Rothstein, Kaplan & Wolf and Howard L. Kaplan, St. Paul, for respondent in No. 49466 and for appellant in No. 49761.

Joerg & Benson and David A. Joerg, Preston, for Pederson.

William J. Nierengarten, Austin, for State Auto. & Cas. Underwriters.

KELLY, Justice.

These appeals in an action brought by plaintiff to recover basic economic loss benefits and interest thereon pursuant to provisions of the Minnesota No-Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41 to 65B.71 (1978), raise the issues of which of two automobile insurers is required to pay these losses and whether plaintiff is entitled

to the statutory interest award. We affirm in part and reverse in part.

Plaintiff, seriously injured in an automobile accident on October 8, 1976, while a passenger in a vehicle owned and operated by Leland Blagsvedt, was not a named insured under any automobile liability insurance policy. He requested Blagsvedt's insurer, All Nation Insurance Company, to pay the basic economic losses sustained as a result of the accident and, upon All Nation's refusal to do so, commenced this action. All Nation denied liability and brought a third party action against State Automobile and Casualty Underwriters, claiming that under the priorities established in § 65B.47, subd. 4, State Automobile was liable for whatever losses plaintiff sustained because he was residing in the household of his third cousin, Walter Peterson, at the time of the accident and for that reason was an insured under an automobile liability insurance policy issued to Peterson by State Automobile.[1] That insurer denied plaintiff had been a member of Peterson's household. The trial court found that plaintiff had not been a member of his cousin's household and consequently determined that All Nation was liable to plaintiff for basic economic loss benefits, including medical expenses stipulated to be $18,971.56, and wage loss of $3,683.90, representing 85% of the wage loss plaintiff had sustained in the 21⅔ months which elapsed between the accident and the trial. The trial court held, however, that plaintiff was not entitled to interest under the no-fault act. Following the entry of judgment, plaintiff and All Nation each appealed.

The record establishes that plaintiff and Peterson are in fact third cousins. The other circumstances which All Nation insists require a holding that as a matter of law plaintiff was residing in the same household with Peterson at the time of the accident may be summarized as follows:

Plaintiff, a 43-year-old unmarried man with an eighth grade education, had done manual labor all his adult life, principally on farms, typically receiving board, room, and wages as his compensation while working as a farmhand. He was an alcoholic and sometimes would leave his work for a week or more, was occasionally jailed, and at times had been institutionalized as a consequence of his drinking. Plaintiff had worked for Peterson for two summers in the middle 1960's, at that time staying at his home. About 15 months before the accident, plaintiff telephoned Peterson from the jail in a nearby town and told him that the authorities there would not release him unless he had a place to go. He asked if he could work for Peterson, to which Peterson agreed. They did not discuss the terms of plaintiff's employment or how long it would last, but Peterson furnished him a small two-room house located 500 feet from his own trailer home and gave him farm chores to do from that time until a month or so before the accident occurred. Plaintiff was furnished his meals at the Peterson home, and Mrs. Peterson did his laundry. Peterson gave plaintiff $40 to $50 a month, "depending on how much [work] he had done." He also bought plaintiff clothing when necessary and allowed him to take soap and razor blades from the Peterson home.

1. Minn.Stat. § 65B.47, subd. 4 (1978), provides in part: .

    (a) The security for payment of basic economic loss benefits applicable to injury to *an insured* is the security under which the injured person is an insured.

    (b) The security for payment of basic economic loss benefits applicable to injury to the driver *or other occupant of an involved motor vehicle who is not an insured* is the security covering that vehicle. [Emphasis added.] Section 65B.43, subd. 5, provides in part:

"Insured" means an insured under a plan of reparation security as provided by sections 65B.41 to 65B.71, including the named insured and the following persons not identified by name as an insured while (a) *residing in the same household with the named insured and* (b) *not identified by name in any other contract* for a plan of reparation security complying with Laws 1974, ch. 408, as an insured:

    \*    \*    \*    \*    \*    \*

    (2) other relative of a named insured \* \*.

Subdivision 5 also provides that a person resides in the same household with the named insured "if that person usually makes his home in the same family unit, even though he temporarily lives elsewhere."

Both agreed, however, that plaintiff did not live with the Petersons and did not socialize with them. During the 15 months prior to the accident, plaintiff disappeared from the farm several times for periods ranging from a week to a month. Plaintiff was paid by Peterson only when he was working, although he apparently was permitted to stay at the little house even when he was not working. Peterson admitted that plaintiff was not reliable and said that he was "stuck" because no one else took care of him. He denied that he had furnished plaintiff the house and meals only because they were related and said that he "would have done it for anybody."

Peterson testified that he did not withhold income or social security taxes from the amounts paid plaintiff but said he had included these amounts in the total wages deducted as a business expense on tax returns. He estimated the rental value of the house furnished plaintiff at $110 a month, the value of the meals furnished at $5 a day, and the value of the laundry at $1.50 per week.

The Petersons became displeased when plaintiff allowed the small house to become very dirty, and about a month before the accident they told plaintiff he would have to go. He then left and they did not see him until the week before the accident, when he returned and spent a night in the small house. The next day he had dinner at the Peterson home, after which Peterson gave him a ride to a nearby town and, in response to a request for money, gave him $5. Plaintiff then went with Blagsvedt, his first cousin, staying at his farm for the few days before the accident occurred.

The trial court determined, based on the foregoing evidence, that plaintiff had been a casual farm laborer while working for Peterson and was not a member of Peterson's household at the time of the accident. He found that plaintiff had lost earnings of $200 a month from October 5, 1976, to the date of trial, July 25, 1978, but held that All Nation was not obligated to pay the interest award provided by § 65B.54, subds. 1 and 2.

In this court, All Nation urges that, as a matter of law, plaintiff was a relative residing in the same household as Peterson at the time of the accident. It also urges that plaintiff was not entitled to wage loss benefits under § 65B.44. Plaintiff has appealed the denial of the award of interest.

■ 1. Although § 65B.43, subd. 5, does not define "residing in the same household with the named insured," this language has been widely used in insurance policies, both to exclude and to extend coverage, and has been construed by this court several times. In all of these cases the facts have differed. In *Engebretson v. Austvold*, 199 Minn. 399, 402, 271 N.W. 809, 810 (1937), we held that the word "household" is synonymous with "family" but broader, including servants or attendants, "all who are under one domestic head; persons who dwell together as a family." *See also Tomlyanovich v. Tomlyanovich*, 239 Minn. 250, 58 N.W.2d 855 (1953); *Simon v. Milwaukee Automobile Mutual Ins. Co.*, 262 Minn. 378, 115 N.W.2d 40 (1962); *Bartholet v. Berkness*, 291 Minn. 123, 189 N.W.2d 410 (1971); and *Van Overbeke v. State Farm Mutual Auto. Ins. Co.*, 303 Minn. 387, 227 N.W.2d 807 (1975). In *Simon* we recognized that determination of the issue of whether individuals are living together as members of the same household rests on the facts of each case. Here, contrary to All Nation's claim, the evidence sustains a finding that plaintiff and Peterson did not have such a relationship.

■ 2. The claim that plaintiff had not established loss of income due to inability to work as a result of his injuries has little merit. It is undisputed that he was seriously injured, and his testimony that shortly prior to trial he had been unable to work even for an hour was not contradicted. The evidence concerning the value of the compensation he received from Peterson was also not contradicted and supports the finding that he had lost earnings of $200 a month from the date of the accident to the

date of trial. Pursuant to § 65B.44, subd. 3, he was properly awarded 85% of that loss.[2]

■ 3. It is not disputed that plaintiff gave notice of his claims to All Nation in February 1977. Consequently, he urges that the trial court erred in refusing to award him interest pursuant to § 65B.54, subds. 1 and 2, on the basic economic loss benefits to which he was entitled.[3] Although the trial court noted that the no-fault act does not expressly require an insurer who contests a claim to pay it when asserted or risk later being required to pay interest, in light of the purpose of the act we believe that the legislature intended to impose that risk. Since the trial court's decision, we construed § 65B.54 in *Haagenson v. National Farmers U. Prop. & Cas. Co.*, 277 N.W.2d 648 (Minn.1979). In that case the insurer refused to pay, claiming that the plaintiff's injuries had not occurred while he was in contact with the insured vehicle. That issue was resolved in plaintiff's favor by a jury, which also awarded damages for intentional infliction of emotional distress and punitive damages based on the insurer's nonpayment of the plaintiff's insurance contracts. This court held that the plaintiff was not entitled to such damages, but he was entitled to the 10 percent penalty under § 65B.54, subd. 2, saying:

The no-fault act, however, does provide a form of remedy for nonpayment of insurance. Minn.St. 65B.54, subd. 1, provides, in part, that "[b]enefits are overdue if not paid within 30 days after the reparation obligor *receives reasonable proof of the fact and amount of loss realized * * ***"; and subd. 2 provides that "Overdue payments shall bear simple interest at the rate of ten percent per annum." (Italics supplied.) We hold that a reparation obligor has received such reasonable proof when an insured has given reasonable notice of a possible claim of right.

*Id.* at 653. Although All Nation distinguishes *Haagenson* because in that case only one insurer was involved, we see no merit in the claimed distinction. Obviously, whether liability is denied by one insurer or two, the insured claimant is denied prompt payment of his claim. If adjudication of liability permits recovery of the interest penalty in one case, it should in the other also. Moreover, denying any interest award to a claimant who has established the validity of his claim will not encourage prompt payment of claims for basic economic loss, a result which would fail to give effect to either § 65B.54, subds. 1 and 2, or to § 65B.42, which specifies prompt payment of basic economic loss benefits as one of the purposes of the no-fault act.[4]

2. Section 65B.44, subd. 3, provides in part:
> Disability and income loss benefits shall reimburse 85 percent of the injured person's loss of present and future gross income from inability to work proximately caused by the nonfatal injury subject to a maximum of $200 per week. * * *
> For the purposes of this section "inability to work" means disability which prevents the injured person from engaging in any substantial gainful occupation or employment on a regular basis, for wage or profit, for which he is or may by training become reasonably qualified.

3. Section 65B.54, subds. 1 and 2, provide:
> Subdivision 1. Basic economic loss benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as income loss, replacement services loss, survivor's economic loss, survivor's replacement services loss, or medical or funeral expense is incurred. Benefits are overdue if not paid within 30 days after the reparation obligor receives reasonable proof of the fact and amount of loss realized, unless the reparation obligor elects to accumulate claims for periods not exceeding 31 days and pays them within 15 days after the period of accumulation. If reasonable proof is supplied as to only part of a claim, and the part totals $100 or more, the part is overdue if not paid within the time provided by this section. Medical or funeral expense benefits may be paid by the reparation obligor directly to persons supplying products, services, or accommodations to the claimant.
> Subd. 2. Overdue payments shall bear simple interest at the rate of ten percent per annum.
The interest rate was raised to 15 percent by 1979 Minn.Laws, ch. 190, § 3.

4. Section 65B.42 provides in part:
> The detrimental impact of automobile accidents on uncompensated injured persons,

We remand to the trial court for the sole purpose of determining the earliest date plaintiff gave reasonable notice of a possible claim of right and to calculate the 10% penalty directed by § 65B.54, subd. 2 (1978), as of that date.

Affirmed in part, reversed in part, and remanded.

OTIS, J., took no part in the consideration or decision of this case.

upon the orderly and efficient administration of justice in this state, and in various other ways requires that sections 65B.41 to 65B.71 be adopted to effect the following purposes:

(1) To relieve the severe economic distress of uncompensated victims of automobile accidents within this state by requiring automobile insurers to offer and automobile owners to maintain automobile insurance policies or other pledges of indemnity which will pro-vide prompt payment of specified basic economic loss benefits to victims of automobile accidents without regard to whose fault caused the accident.

\* \* \* \* \* \*

(3) To encourage appropriate medical and rehabilitation treatment of the automobile accident victim by assuring prompt payment for such treatment.