### In Re the Arbitration of Jean Jernigan ROSENBERGER, petitioner, Respondent,

### v.

### AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Appellant.

### No. 51229.

Supreme Court of Minnesota.

Aug. 21, 1981.

Rehearing Denied Oct. 5, 1981.

Peterson, Bell & Converse, St. Paul, for appellant.

Michael J. Healey, St. Paul, for respondent.

TODD, Justice.

Respondent, Jean Jernigan Rosenberger (Rosenberger), was injured in an accident involving two uninsured motorcycles. Rosenberger owned an automobile but had failed to obtain the mandatory insurance coverages. Rosenberger filed a claim with appellant, American Family Mutual Insurance Company (American Family), her stepfather's automobile insurer, for uninsured motorist benefits. American Family denied the claim, contending that Rosenberger was not a resident of her stepfather's home at the time of the accident and that her ownership of an automobile and failure to insure it barred her recovery. The matter was submitted to a panel of three arbitrators, a majority concluding that Rosenberger was not a resident of her stepfather's home at the time of the accident. On review of this finding, the district court concluded that Rosenberger was a resident of her stepfather's home at the time of her accident and that her recovery of uninsured motorist benefits was not barred by her ownership of an automobile or her failure to insure it. We affirm.

On June 9, 1977, Rosenberger was riding as a passenger on an uninsured motorcycle. The time was approximately 2:30 a. m., and the motorcycle was traveling in an easterly direction on State Highway No. 10 just west of Big Lake, Minnesota. The rear tire of the motorcycle blew out, causing it to skid. Rosenberger jumped off the motorcycle, landing on her left knee. The injury to

her left knee caused her to be unable to move or stand after the accident.

Another motorcycle carrying two persons with whom Rosenberger and her companion were traveling was approximately three-quarters of a mile ahead of the Rosenberger motorcycle when the tire blew out. When the occupants of the second motorcycle realized that Rosenberger and her companion were no longer behind them, they turned the motorcycle around and headed back down the shoulder of the road in the wrong direction. Rosenberger was attempting to move with the companion's help when they realized that the other motorcycle was right on top of them. Unable to move out of the way, Rosenberger's right leg was run over and crushed by the motorcycle. The damages sustained by Rosenberger exceed $50,-000.

Because both of the motorcycles involved in the accident were uninsured, Rosenberger sought to recover uninsured motorist benefits under the two policies of no-fault automobile insurance belonging to her stepfather. Rosenberger owned a Mustang automobile but had not obtained no-fault insurance. She had falsely stated to the Motor Vehicle Division that she had insurance.

American Family, the insurer that issued both uninsured motorist policies to Rosenberger's stepfather, denied coverage. American Family claimed that Rosenberger was not a member of her stepfather's household and therefore not covered under the policies. American Family also claimed that Rosenberger's ownership of an automobile and the fact that she had no insurance on her automobile prevented coverage under its policy and under the No-Fault Act.

Pursuant to an arbitration clause in the insurance policies, the dispute was submitted to a panel of three arbitrators. After the hearing, two of the arbitrators concluded that Rosenberger was not a resident of her stepfather's home and therefore was not covered by the uninsured motorist provisions of the policies. The third arbitrator filed a dissenting opinion in which he disa-greed with the majority's finding that Rosenberger was not a resident of her stepfather's home.

Rosenberger's attorney then moved the district court to vacate the arbitration award on the ground that the arbitrators had exceeded their authority in determining the residency issue and requested that this issue be determined de novo by the district court. After hearings, the district court concluded that the arbitrators' determination of residency should be reviewed de novo. The court then concluded that Rosenberger was a resident of her stepfather's home at the time of the accident and that she was entitled to uninsured motorist benefits under the American Family policies. American Family appeals that determination.

The issues presented by this appeal are:

1. Whether the district court erred in reviewing the arbitrators' determination de novo.

2. Whether the evidence is sufficient to support the district court's finding that respondent was a resident of her stepfather's home at the time of the accident.

3. Whether the district court erred in concluding that respondent's recovery was not barred by her ownership of an automobile or her failure to insure it.

1. American Family's first argument is focused on the scope of review applied by the district court in its reconsideration of the residency question. American Family claims that the question of Rosenberger's residency in her stepfather's home was a question of fact to be determined by the arbitrators, thus precluding de novo review. Alternatively, American Family argues that respondent is estopped, by submitting the issue of residency to the arbitrators, from now claiming that issue is not arbitrable. Resolution of this issue is governed by the question of whether the arbitration clause is broad enough to encompass the question of coverage. The arbitration clause states, in part, as follows:

If any person making claim hereunder and the company do not agree that such

person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount payable hereunder, then each party shall, upon written demand of either, select a competent and disinterested arbitrator.

In *Dunshee v. State Farm Mutual Automobile Insurance Co.*, 303 Minn. 473, 480, 228 N.W.2d 567, 572 (1975), this court held that whether an arbitration clause of almost identical language encompassed coverage questions was "reasonably debatable." *Dunshee* went on to state that because the coverage question was not clearly encompassed by the arbitration clause, the whole dispute should initially be determined by arbitration, subject to the right of judicial review. *See id.* 483–84, 228 N.W.2d at 573.

In *U. S. Fidelity & Guaranty Co. v. Fruchtman*, 263 N.W.2d 66, 71 (Minn.1978), the court was confronted with the question of the scope of review applicable to a coverage question initially determined by the arbitrator under the *Dunshee* procedure. The *Fruchtman* court stated:

> Where coverage is preconditioned on the establishment of facts, such as in this case, concerning either the unidentifiability of the operator or owner of a "hit-and-run vehicle" or its physical contact with the insured's vehicle, such factual dispute must be tried and resolved by the trial court accompanied by findings of fact. Rule 52.01, Rules of Civil Procedure. If such factual preconditions are not established, coverage is not afforded by the policy, and the objecting party must be protected from the burden of unauthorized arbitration of both the coverage dispute and the merits of the insured's claim.

In this case, the arbitrability of the coverage dispute is challenged in judicial proceedings to vacate the arbitrator's award. In *State v. Berthiaume*, Minn., 259 N.W.2d 904, we held that such proceedings are de novo; that the trial court is not bound by the arbitrator's determination; that the objecting party has the burden of proving the invalidity of the arbitrator's award; and that where the arbitrator has clearly exceeded his powers, the award must be vacated.

Based on the policy language, it seems clear that the question of whether Rosenberger was a resident of her stepfather's home is equivalent to the question of whether she is covered under the insurance policies. The uninsured motorist coverage in the American Family policies provides insurance for an "insured." An insured is defined in the policy as "the named insured as stated in the policy and any person designated as named insured in the declarations and, while residents of the same household, the spouse of any such named insured and relatives of either * * *." The policy defines a relative as "a person related to the named insured who is a resident of the same household, but does not include any person who, or whose spouse, owns a private passenger automobile." Therefore, if Rosenberger is found not to be a resident of her stepfather's home, she is not an insured and not covered by the policy.

Since the question of Rosenberger's residency is a coverage question and since the court in *Dunshee* declared an almost identical arbitration clause to be "reasonably debatable" as to whether questions of coverage were arbitrable, the district court was correct in reviewing the arbitrators' finding on this issue de novo. American Family's argument that respondent is estopped to contest the arbitrability of the coverage question because it was not raised before the arbitrators is based on *Twomey v. Durkee*, 291 N.W.2d 696 (Minn.1980). In *Twomey*, this court held that one of the parties to a grievance and arbitration procedure was estopped to claim later that the arbitrator's decision was a nullity. The *Twomey* court did indicate, however, that objections relating to arbitrability would be preserved pursuant to Minn.Stat. § 572.19 (1980). This statement is consistent with the court's statement in *Layne-Minnesota Co. v. Regents of the University,* 266 Minn. 284, 291, 123 N.W.2d 371, 376 (1963), that Minn.Stat. § 572.19, subd. 1(3, 5) (1980),

reserves a party's right to challenge the arbitrability of any question passed upon by the arbitrator in subsequent court proceedings. Since the question of arbitrability was expressly excepted from the estoppel in *Twomey* and since the court has indicated that Minn.Stat. § 572.19, subd. 1(3, 5) (1980), reserves a party's right to challenge arbitrability, Rosenberger is not estopped from challenging the arbitrability of the residency issue.

■ 2. American Family contends that the district court erred in its factual determination that Rosenberger was a resident of her stepfather's home. American Family relies on Minn.Stat. § 65B.43, subd. 5 (1980), which defines a resident as: "[a] person resides in the same household with the named insured if that person usually makes his home in the same family unit, even though he temporarily lives elsewhere" and argues that because Rosenberger resided only temporarily in her stepfather's home, she was not a resident. To support this argument, American Family relies on *Fruchtman v. State Farm Mutual Automobile Insurance Co.*, 274 Minn. 54, 142 N.W.2d 299 (1966), a case holding that a son who temporarily resided with his parents was not a resident of the household.

The standard of review governing our consideration of the district court's findings of fact is that those findings will be overturned only if they are clearly erroneous. Minn.R.Civ.P. 52.01. We find the following facts to be of significance in determining whether Rosenberger was a resident of her stepfather's home.

Rosenberger testified that she lived with her mother until 1971. From 1971 until 1973, she lived with her father. In 1973, Rosenberger moved back with her mother but then ran away and was placed in a group home. In 1974, she moved in with her boy friend, remaining there until August of 1976. In August of 1976, she moved in with her mother for two months and then moved back in with her boy friend. In April of 1977, after a fight with her boy friend, Rosenberger moved back into her mother's home. In the intervening period,

her mother had remarried. Rosenberger's stay with her mother and stepfather was understood by all parties to be of limited duration while she looked for a job and another place to live. These facts are essentially undisputed.

In late May or early June of 1977, a dispute arose between Rosenberger, her mother, and stepfather. Rosenberger testified that she was told to get out of the house as soon as she could. Both her mother and her stepfather testified that in late May they gave her a two-week deadline to move out of their house. On June 3, 1977, Rosenberger left on a camping trip with friends. She returned from this trip on June 7. Rosenberger testified that she planned to return to the home after her trip. Her stepfather testified that Rosenberger was to leave the home permanently but could not recall if she moved her belongings from the house on that date. Rosenberger did not return to the home until after the accident on June 9, 1977.

This evidence shows that there was a conflict in the testimony presented on the residency question. Although Rosenberger's residence in her stepfather's home was understood by all parties to be of less than infinite duration, the evidence shows that she believed she could stay until she located a job and another place to live. Since the testimony was conflicting as to whether this relationship was terminated before the date of the accident, we cannot conclude that the district court's finding that Rosenberger was a resident of her stepfather's home is clearly erroneous.

The *Fruchtman* case is distinguishable from this case and we therefore decline to follow it. In *Fruchtman*, the son was self-supporting while at the home; Rosenberger was not. The son in *Fruchtman* was not physically present in the home for more than 2 weeks at a time in 2½ years; Rosenberger resided in her stepfather's home for 2 months. In *Fruchtman*, the son had specific future plans to leave the home; Rosenberger had no such plans. The son in *Fruchtman* was 27 years of age; at the time of the accident, Rosenberger was 19.

In *Fruchtman*, both parents and son testified that they intended no permanent relationship; here, there is a sharp conflict in the evidence. Based on these factual differences, the *Fruchtman* case is not controlling. As we have previously stated, the "determination of * * * whether individuals are living together as members of the same household rests on the facts of each case." *Pederson v. All Nation Insurance Co.*, 294 N.W.2d 693, 695 (Minn.1980).

3. Rosenberger's final argument for reversal is that the trial court erred in concluding that failure to obtain insurance on her own automobile did not bar her from recovering uninsured motorist benefits. This argument is based on two separate points. First, American Family argues that Rosenberger's failure to obtain insurance was a violation of Minn.Stat. § 65B.48, subd. 1 (1980), requiring every owner of a motor vehicle to obtain insurance, a criminal violation under Minn.Stat. § 65B.67, subd. 2 (1980). Because of this criminal act, American Family argues that Rosenberger should be barred from collecting benefits under its policy. Second, American Family argues that the clause in its policy which excludes from the definition of an insured "any person who, or whose spouse, owns a private automobile" prevents Rosenberger's recovery.

American Family's argument that Rosenberger's failure to obtain insurance is a criminal violation barring her recovery was rejected by this court in *Iverson v. State Farm Mutual Automobile Insurance Co.*, 295 N.W.2d 573 (Minn.1980). In *Iverson*, the court rejected an almost identical argument involving basic economic loss benefits under the No-Fault Act. The court reasoned that "the legislature [did not intend] to delegate to insurance companies the authority to enforce the mandatory obligation of vehicle owners to obtain insurance * *." *Id.* at 575. In fact, *Iverson* went further than the instant case since the accident there arose out of the use of an uninsured automobile. *See id.* This case is close to *Nygaard v. State Farm Mutual Automobile Insurance Co.*, 301 Minn. 10, 221 N.W.2d 151 (1974), in which the court held that an insured, riding an uninsured motorcycle when struck by an uninsured motor vehicle, could obtain uninsured motorist benefits.

American Family's second argument, that its policy language excluding as an insured one who owns an automobile precludes Rosenberger's recovery, is controlled by this court's decision in *Anderson v. Illinois Farmers' Insurance Co.*, 269 N.W.2d 702 (Minn.1978). In *Anderson*, this court held that a passenger in a car struck by an uninsured motorist could recover benefits under her stepfather's uninsured motorist coverage even though she owned her own automobile. The court rejected this exclusion as too broad, holding that the plaintiff would have to be specifically excluded by name in order to be denied benefits under the policy. *Id.* at 707, n.8.

Affirmed.

OTIS, Justice (dissenting).

I would reinstate the decision of the arbitration panel which found that respondent Rosenberger was not a resident of her stepfather's home and therefore was not covered by the uninsured motorist provisions of her stepfather's insurance policy.

Whether Rosenberger was a resident of her stepfather's home turns on the application of Minn.Stat. § 65B.43(5) (1980). That statute defines a resident as one who "resides in the same household with the named insured if that person *usually* makes his home in the same family unit, even though he temporarily lives elsewhere." *Id.* (emphasis added).

The record shows that from 1957 through June 1974, Rosenberger lived with her mother off and on for a period of 15 years. In 1974 respondent ran away from home, and her mother placed her in a group home. By the end of the year respondent had left the group home and had taken up residence with one Lee Kingen. From 1974 through 1976, she and Kingen lived in three different places. For a brief time they lived at his parents' house.

In August 1976 Rosenberger spent five weeks at her mother's house, but in October 1976 she resumed residence with Kingen. In April 1977, two months prior to her motorcycle accident, she asked permission to stay with her mother and stepfather until she could find another place to live. They reluctantly agreed to take her in, but only with the understanding that as soon as possible, she would find a paying job, rent an apartment, and move out of her parents' home. Although she acknowledges that this was the understanding, she subsequently refused to find work, lied to her parents about her job status, and made no effort to find an apartment.

The trial court took no additional testimony in reaching its decision and the facts elicited at the hearing before the arbitrators are therefore governing. Judge Robert B. Gillespie and Robert J. Monson in their capacity as majority arbitrators made the following findings:

Anderson [plaintiff's stepfather] informed her [plaintiff] that she could stay only a couple of weeks. A few articles of household goods were placed in the Anderson garage, and her clothing, in paper bags, were [sic] placed in the basement where she was provided with a rollaway bed. The Andersons told Jean then and on several later occasions that she could only stay in their home temporarily. While there, Jean ate only some of her meals in the home, was gone some entire weeknights and every weekend and spent several days in Elk River and Denver. She did no housework and had little social contact with the Andersons.

Upon learning in May that Jean had been fired from her job, her mother told Jean to get a job and told her she would have to move because she did not want Jean to be around her younger sister. Neither Mr. or Mrs. Anderson considered Jean as a member of their family unit, only as an unwelcome guest. After repeated demands that she leave the home, the Andersons ordered her to get out with a deadline of June 4th or 5th.

On June 3rd, Jean left the Anderson home, with a bag of clothes and made a trip to Bayfield, Wisconsin, with Jeffrey Steiner and his brother, returning to Minnesota late Tuesday night on June 7th. She did not go back to the Anderson house but picked up her car in the Anderson yard and drove around all night without sleep. The next morning, June 8th, Jean registered at the Anoka Holiday Inn (about 10 or 15 miles from the Anderson home) where she intended to spend the night with McCormick. In the afternoon, she met McCormick at the Inn, and later they, together with Peterson and Sue Cruikschank, drove on their motorcycles to St. Cloud. On their return trip, the instant accident occurred. At the hospital, Jean gave her address as 2325 Crosstown Blvd. N.E., Fridley, Minnesota.

In the instant case, there is no evidence that Jean intended to remain at the Anderson home. To the contrary, she fully understood that she was to move out and was under orders to do so before June 5, 1977. Her leaving the home before that date and never returning there (although she was in the yard on June 7th), raises a persuasive inference that she knew she could not stay longer at the Anderson home and did not reside there on June 9th. There is no testimony on her part that she intended to return and there is ample evidence that the Andersons did understand that she would not return. Likewise, there is uncontroverted testimony that Jean's presence at the Anderson home was transient and governed by conditions completely inconsistent with her contention that she usually made her home in the same family unit or that she was treated as a member of the family. Even the Andersons' charitable offer to have Jean come to their home to recuperate was conditioned upon her leaving as soon as she recovered from her injuries.

In distinguishing *Engebretson v. Austvold*, 199 Minn. 399, 271 N.W. 809 (1937) and *State Farm Mutual Automobile Insurance Co. v. Borg*, 396 F.2d 740 (8th Cir. 1968) Judge Gillespie made the following observations:

The facts of the Engebretson case are easily distinguishable from those in the instant case, where there is no evidence of a welcome return to the Anderson home or the establishment of any of the usual family relationship consistent with her becoming a usual member of the household. Ever since she was 13 in 1971, Jean has consistently lived with others than her mother. Her return in 1974 terminated her run away and take over by the welfare authorities. Her return to the home in 1976 was temporary and conditioned upon her leaving in a few weeks. Her return in April, 1977, was intended to be only temporary, and in fact, was with the understanding that she was to reside there only under certain conditions.

It strains one's credibility to believe that Jean understood the Anderson home to be her "usual" residence. If it could be argued that it was her usual residence during April to June 5th, the facts of the case show clearly that such a residence ended on June 3rd, 1977. She left the home then, under an order of termination, and never returned prior to the accident. All of her actions upon her return to Minnesota raise a convincing inference that she, in obedience to such termination of residence, never intended to return to the home after June 3rd.

    *     *     *     *     *     *

I have duly considered the Federal case of *State Farm Mutual Co. v. Borg*, 396 F.2d 740 (1968). * * * I find no difficulty in distinguishing the Federal Court's conclusion with the conclusions I have enunciated in the instant case. Jean did not live a lifetime with her mother; she had definitely severed the household "umbilical cord"; she did not enjoy the amenities of the home; she was not welcome at the home, and her physical presence in the home prior to June 3rd was conditional only and inconsistent with a "family unit" relationship; and she had physically left the home before June 9th, 1977.

Under the facts of this case clearly Rosenberger did not qualify as a "resident" of her stepfather's household and in my opinion Judge Gillespie was correct in holding that our decision in *Fruchtman v. State Farm Mutual Automobile Insurance Co.*, 274 Minn. 54, 142 N.W.2d 299 (1966) governs. There, in finding that the plaintiff was not covered because he was not a resident of his parents' household, we noted that plaintiff

"had not been physically present in the home for more than a week or two on any one occasion for a period of approximately 2½ years prior to the accident * * *. [H]is visit at the family household was of a strictly transient nature. * * * [I]t is fair to infer that under the circumstances neither plaintiff nor his parents considered him a permanent part of the household but simply intended that he enjoy the status of a visitor."

*Id.* at 57, 142 N.W.2d at 301. In the present case, as in *Fruchtman*, the relationship was that of a guest and host and none of the parties regarded Rosenberger's presence in the home as anything more than an emergency measure to provide shelter while she found suitable quarters elsewhere.

I would reverse.

SHERAN, Chief Justice (dissenting).

I agree with views of Justice Otis.

PETERSON, Justice (dissenting).

I join in the dissent of Justice Otis.

SIMONETT, Justice (dissenting).

I join in the dissent of Justice Otis.