DONALD DUNSHEE v. STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY.

228 N. W. 2d 567.

April 18, 1975—No. 45124.

474

*DeParcq, Anderson, Perl, Hunegs & Schwebel* and *James R. Schwebel,* for appellant.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, M. J. Coyne,* and *O. C. Adamson II,* for respondent.

ROGOSHESKE, JUSTICE.

Plaintiff, Donald Dunshee, an insured policyholder under a policy of motor vehicle liability insurance issued by defendant, State Farm Mutual Automobile Insurance Company, appeals from an order of Hennepin County District Court denying his motion, filed pursuant to the Uniform Arbitration Act, Minn. St. 572.09, to arbitrate his claim that he was entitled to damages for bodily injuries from defendant. His claim arises out of an automobile collision with an alleged "hit-and-run motor vehicle" included as an "uninsured motor vehicle" by policy definition. An arbitration provision of the policy empowers arbitrators to determine an insured's legal entitlement to recover damages from the owner or operator of an uninsured motor vehicle. Determining that the scope of the arbitration clause is reasonably de-

batable under standards previously adopted by decisions of this court construing the Uniform Arbitration Act, we reverse and order arbitration of the controversy.

At the time of the accident, plaintiff was insured by defendant under two policies, both containing the following pertinent provisions relating to uninsured-motorist coverage:

"COVERAGE U—DAMAGES FOR BODILY INJURY CAUSED BY UNINSURED MOTOR VEHICLES

"To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

&ast; &ast; &ast; &ast; &ast;

"DEFINITIONS—SECTION III

&ast; &ast; &ast; &ast; &ast;

"Hit-and-Run Motor Vehicle—means a land motor vehicle which causes *bodily injury* to an *insured* arising out of physical contact of such vehicle with the *insured* or with a vehicle which the *insured* is *occupying* at the time of the accident, provided:

(1) there cannot be ascertained the identity of either the operator or owner of such *hit-and-run motor vehicle;* &ast; &ast; &ast;

&ast; &ast; &ast; &ast; &ast;

"Uninsured Motor Vehicle—means:

&ast; &ast; &ast; &ast; &ast;

(2) a *hit-and-run motor vehicle* as defined; &ast; &ast; &ast;.

&ast; &ast; &ast; &ast; &ast;

"10. Arbitration. If any *person* making claim under coverage U and the company do not agree that such *person* is legally en-

titled to recover damages from the owner or operator of an *uninsured motor vehicle* because of *bodily injury* to the *insured,* or do not agree as to the amount payable hereunder, then each party shall, upon written demand of either, select a competent and disinterested arbitrator. The two arbitrators so named shall select a third arbitrator, or if unable to agree thereon within 30 days, then upon request of the *insured* or the company such third arbitrator shall be selected by a judge of a court of record in the county and state in which such arbitration is pending. The arbitrators shall then hear and determine the question or questions so in dispute, and the decision in writing of any two arbitrators shall be binding upon the *insured* and the company, each of whom shall pay his or its chosen arbitrator and shall bear equally the expense of the third arbitrator and all other expenses of the arbitration, provided that attorney fees and fees paid to medical or other expert witnesses are not deemed to be expenses of arbitration but are to be borne by the party incurring them. Unless the parties otherwise agree, the arbitration shall be conducted in the county and state in which the *insured* resides and in accordance with the usual rules governing procedure and admission of evidence in courts of law."

In April 1973, plaintiff was driving his motor vehicle west on Interstate Highway No. 494 (I-494) at a slow speed due to blowing snow and poor visibility. Approaching the Cedar Avenue overpass in Bloomington, he observed that a multivehicle accident ahead of him obstructed all three lanes of traffic on I-494. He came to a complete stop east of the overpass. While stopped, his vehicle was struck from the rear by another, seriously injuring him and rendering him immediately unconscious. Postaccident investigation by his lawyers and investigators has proved fruitless in determining the identity of the offending motorist. Plaintiff, in February and again in March 1974, submitted to defendant his demand for arbitration pursuant to provision 10 of the policy. Defendant refused to proceed with arbitration and instead instituted a declaratory judgment action to determine

whether coverage extended to plaintiff's claim. In response, plaintiff moved the district court to compel arbitration pursuant to § 572.09 of the uniform act. The court denied his motion, leading to this appeal.

■ The issue thus presented is, where an arbitration clause of an uninsured-motorist endorsement calls for the determination of the insured's legal entitlement to recover damages from the owner or operator of an uninsured motor vehicle, whether this, as well as the insured's claim that he was injured by a hit-and-run vehicle as defined in the policy, is within the scope of the arbitration clause. This question of the intended scope of the arbitration clause regarding a so-called "coverage" issue is one of first impression in this state. It must be decided by resort to the pertinent provisions of the Uniform Arbitration Act which manifests this state's policy favoring arbitration for the informal, speedy, and inexpensive resolution of present and future disputes arising between contracting parties where the contract contains an arbitration clause. 2 Dunnell, Dig. (3 ed.) § 487 et seq.[1]

Considering this longstanding policy, Minnesota for many years provided for arbitration of certain disputes by statute.[2] Continuing that policy, on April 24, 1975, Minnesota became the first state to adopt the Uniform Arbitration Act, codified as Minn. St. 572.08 to 572.30. Approved in 1955 by the National Conference of Commissioners on Uniform State Laws and the American Bar Association, the uniform act has now been adopted

[1] Although in the minority, Minnesota as early as 1941 adopted a policy of favoring arbitration. We have also held that an agreement to arbitrate a future dispute over revision of contract terms was valid and enforceable, thus repudiating the common-law doctrine of revocability. Park Const. Co. v. Independent School Dist. No. 32, 209 Minn. 182, 296 N. W. 475 (1941); Zelle v. Chicago & N. W. Ry. Co. 242 Minn. 439, 65 N. W. 2d 583 (1954).

[2] Minn. St. 1953, §§ 572.01 to 572.07, repealed by L. 1957, c. 633, § 24, subd. 4.

by 17 states.[3] The pertinent provision is § 572.08, which provides in part:

"A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration *any controversy thereafter arising between the parties* is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." (Italics supplied.)

Although the language of the act appears not to limit its scope, over the years it has generally been applied to commercial disputes, such as labor-management, construction, franchising, and other types of business contracts.[4] However, we find no court or commentator declaring that the act applies only to commercial disputes. Thus, at the outset we hold that the act as adopted and enacted by the legislature applies to a dispute involving an arbitration provision in an uninsured-motorist endorsement of an automobile liability policy. Defendant so conceded. Perhaps the main reason that the uniform act has not been declared to cover the type of situation presented is that for the most part uninsured-motorist endorsements did not start appearing in automobile liability policies until the mid-1960's.[5] By that time, much of the original case law had, by implication, "limited" the

[3] 7 U. L. A., 1974 pocket part, p. 7.

[4] Pirsig, *Some Comments on Arbitration Legislation and the Uniform Act,* 10 Vand. L. Rev. 685; Pirsig, *The New Uniform Arbitration Act,* 11 Bus. Lawyer 44; Pirsig, *Toward a Uniform Arbitration Act,* 9 Arb. J. 115.

[5] All 50 states now require by statute insurers to provide uninsured-motorist coverage. See, Note, 3 N. Mex. L. Rev. 220, 221. The uninsured-motorist endorsements used uniform language drafted by the National Bureau of Casualty Underwriters and the Mutual Insurance Rating Bureau. The 1966 standard endorsement's arbitration clause, adopted by most major carriers in the insurance industry, is substantially similar to clause 10 of defendant's endorsement here. See, Widiss, Guide to Uninsured Motorist Coverage, App. A, pp. 291, 297.

act to commercial areas and left doubt as to its application to automobile insurance disputes.

Our prior decisions construing the act recognize that § 572.09 (a, b, and d) [6] authorizes not only an application to compel arbitration but also authorizes a court to interfere and to protect a party from being compelled to submit to arbitration proceedings where no arbitration agreement exists, either in fact or because the controversy sought to be arbitrated is not within the scope of the arbitration clause of the contract. Layne-Minnesota Co. v. Regents of the University, 266 Minn. 284, 123 N. W. 2d 371 (1963). However, regarding the latter, we recognized that problems arise when the scope of the arbitration clause does not clearly express the intention of the contracting parties (266 Minn. 291, 123 N. W. 2d 376):

"* * * Where the parties are in conflict as to the scope of the provision for arbitration, and the question of the parties' intention as to such scope is reasonably debatable, the problem arises

[6] Minn. St. 572.09 (a, b, and d) provides: "(a) On application of a party showing an agreement described in section 572.08, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.

"(b) On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.

* * * * *

"(d) Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this section or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such stay."

as to whether the court or the arbitrators shall decide the question. We believe in such cases the rule should be, and we hold, that the issue of arbitrability be initially determined by the arbitrators subject to a party's right reserved in § 572.19, subd. 1(3, 5), to challenge such determination subsequent to any award."

This rule was reaffirmed in our subsequent decisions in Atcas v. Credit Clearing Corp. of America, 292 Minn. 334, 197 N. W. 2d 448 (1972), and Har-Mar, Inc. v. Thorsen & Thorshov, Inc. 300 Minn. 149, 218 N. W. 2d 751 (1974).

■ Plaintiff claims that at the very least the scope of the arbitration clause in State Farm's policy is reasonably debatable, and thus the issue of whether the tortfeasor was a hit-and-run driver should be determined by arbitration. Defendant maintains that the language "whether the insured or such representative is legally entitled to recover such damages" is clear, and that arbitration applies only to issues of (1) negligence of the tortfeasor, and (2) amount of damages, leaving all other "coverage" issues, such as the one present here, to be resolved by a court in a declaratory judgment action prior to arbitration. We do not agree with defendant that the wording of its arbitration clause clearly expresses the intention of the parties to the contract, or indeed defendant's unilateral intention, to limit its scope to fault and damages. While we do not hold, as plaintiff would have us do, that all coverage issues are explicitly subject to arbitration by this clause, we do hold that the issue of whether plaintiff's claim of injury by a hit-and-run motorist is intended to be subject to arbitration is reasonably debatable, and thus the question of the scope of the arbitration clause is initially subject to arbitration.

■ Were we to hold that plaintiff's right to arbitration be initially decided in court, it would lead to the problems suggested by Professor Widiss in his treatise, Guide to Uninsured Motorist Coverage, § 6.23, p. 208:

"Allowing the insurance company to stay the arbitration pending the determination of whether coverage exists means that a

claimant may be forced through a multiple adjudicative process often including three stages: first, a judicial hearing to determine whether the arbitration should be stayed, then a judicial resolution of whether coverage exists, and finally an arbitration to ascertain the liability of the uninsured motorist for purposes of the uninsured motorist coverage. In a context where the maximum insurance recovery is generally $10,000 for such a claim, an adjudicative process which subjects claimants to a series of two or three separate hearings is certainly suspect, and probably undesirable."

Also, accepting defendant's contention would go against the basic intent of the uniform act, which is to discourage litigation and to foster speedy, informal, and relatively inexpensive procedures for the voluntary resolution of disputes in a forum created, controlled, and administered by the written arbitration agreement.

This issue of the scope of an arbitration clause in an uninsured-motorist provision has led to much litigation, but the divergent positions of various courts provide no clear trends to follow.

The first state to hold that arbitration would not include issues related to the terms or existence of coverage, but includes only liability and damages, was New York. In Rosenbaum v. American Surety Co. 11 N. Y. 2d 310, 229 N. Y. S. 2d 375, 183 N. E. 2d 667 (1962), in a 4-3 decision the majority declared the wording of the arbitration clause to be "clear" as to its intended scope. However, the strong dissenting opinion, which became the basis for contrary decisions in other states, casts some doubt as to whether the wording was indeed lucid. Other courts following the New York view are Connecticut,[7] Illinois,[8] Arizona,[9] Colo-

---

[7] Frager v. Pennsylvania General Ins. Co. 155 Conn. 270, 231 A. 2d 531 (1967); Visselli v. American Fidelity Co. 155 Conn. 622, 237 A. 2d 561 (1967).

[8] Flood v. Country Mutual Ins. Co. 41 Ill. 2d 91, 242 N. E. 2d 149 (1968); Safeway Ins. Co. v. Parker, 105 Ill. App. 2d 208, 245 N. E. 2d 75 (1969).

[9] Allstate Ins. Co. v. Cook, 21 Ariz. App. 313, 519 P. 2d 66 (1974).

rado,[10] Florida,[11] and Washington.[12] Noteworthy is the fact that Illinois and Arizona have adopted, with some variation, the Uniform Arbitration Act. These decisions appear to limit the purpose and objective of the act by saying that the parties are bound to arbitrate only those issues which by clear language they have agreed to arbitrate, and that arbitration clauses will not be extended by construction or implication despite the salutary purpose of the act. We prefer to take an approach which we believe is mandated by the underlying policy and purpose of the act and allow arbitration of the scope of the arbitration clause where, as here, the parties' intention as to its scope is reasonably debatable. If that question is resolved in favor of plaintiff, then the issue of whether he was struck by a hit-and-run driver is also subject to arbitration. In short, in a case such as this, the intention of the act is to preclude judicial interference by the trial court except to stay the declaratory action and to order the parties to proceed to arbitration of the entire controversy.

The jurisdictions which have adopted plaintiff's reasoning state that either the wording of the arbitration clause is sufficiently broad to include some or all coverage issues or at least that the wording "legally entitled to recover damages" is ambiguous, and the failure of the clause to explicitly exclude coverage disputes will be held against the insurer. These jurisdictions are Pennsylvania,[13] Massachusetts,[14] California,[15] Oregon,[16] and

---

[10] International Service Ins. Co. v. Ross, 169 Colo. 451, 457 P. 2d 917 (1969).

[11] Midwest Mutual Ins. Co. v. Santiesteban, 287 So. 2d 665 (Fla. 1973).

[12] Hartford Acc. & Ind. Co. v. Novak, 83 Wash. 2d 576, 520 P. 2d 1368 (1974).

[13] National Grange Mutual Ins. Co. v. Kuhn, 428 Pa. 179, 236 A. 2d 758 (1968); Allstate Ins. Co. v. McMonagle, 449 Pa. 2d 362, 296 A. 2d 738 (1972); Webb v. United Services Auto. Assn. 227 Pa. Super. 508, 323 A. 2d 737 (1974).

[14] Employers' Fire Ins. Co. v. Garney, 348 Mass. 627, 205 N. E. 2d 8 (1965); McGovern v. Middlesex Mutual Ins. Co. 359 Mass. 443, 269 N. E. 2d 445 (1971).

[15] Orpustan v. State Farm Mutual Auto. Ins. Co. 7 Cal. 3d 988, 103 Cal. Rptr. 919, 500 P. 2d 1119 (1972); Van Tassel v. Superior Court of Fresno County, 12 Cal. 3d 624, 116 Cal. Rptr. 505, 526 P. 2d 969 (1974).

[16] Fawver v. Allstate Ins. Co. 267 Ore. 292, 516 P. 2d 743 (1973).

Nevada.[17] What is puzzling about some of the cases is that, even though Massachusetts and Nevada have adopted the uniform act, the opinions upholding a broad scope of arbitration do not make the act a basis for the decision or, indeed, cite it as controlling.

The opposing positions taken by the out-of-state cases cited almost compel the conclusion that under the standard language of the arbitration clause, clause 10 of defendant's policy, it is at the very least reasonably debatable as to what disputes are arbitrable. Surely, if the standard language so clearly limits the disputes submissible to arbitration, so many instances of judicial interference cannot be readily explained. The only decision we can find which relied upon the uniform act to compel arbitration of an uninsured-motorist-coverage dispute is Michigan Mutual Lia. Co. v. Graham, 44 Mich. App. 406, 205 N. W. 2d 289 (1973). That decision, which quoted extensively from this court's opinion in Layne-Minnesota Co. v. Regents of the University, *supra*, held that an agreement to arbitrate encompasses all controversies arising under the insurance contract that are not expressly exempt.

Mindful that Michigan modified the uniform act to compel arbitration of all controversies not expressly exempt by the agreement, we do not wish to extend our holding that far. We hold only that, since plaintiff's claim of injury by a hit-and-run driver may, depending on the proof submitted, be found by the arbitrators to be within the scope of the issues subject to arbitration under the arbitration clause, the entire controversy should be initially determined by arbitration. While this disposition may appear to prolong a resolution of the controversy, it would not have done so had the trial court ordered the parties to proceed to arbitration under the reasonably-debatable test. Had that occurred and the arbitrators found plaintiff's claim not subject to arbitration, the controversy over whether it was arbitrable would likely have ended. Had they found the claim arbitrable

[17] Northwestern Security Ins. Co. v. Clark, 84 Nev. 716, 448 P. 2d 39 (1968).

and made disposition of it on the merits acceptable to both parties, arbitration would likewise have ended the dispute. If defendant insurer had disagreed with the arbitration award, judicial review to vacate, modify, or correct it would have been available under §§ 572.19 and 572.20. Moreover, § 572.19(3, 5) expressly permits judicial review of both the existence and the scope of the arbitration agreement. The very fact that defendant placed an arbitration clause in the uninsured-motorist endorsement where not required to do so fortifies the result we reach.[18] This action indicates either a choice or at least a disposition to favor arbitration of disputes arising under the endorsement. Since it is most unlikely that any insured takes part in choosing the language of an automobile liability policy, the choice of the language of the arbitration clause was that of defendant's underwriters. Its lack of clarity compels a construction favoring plaintiff's demand for arbitration of the entire controversy.

Our disposition is consistent not only with our prior decisions but with the purpose and objectives of the uniform act, implementing it in the manner contemplated by its drafters. It would also be more likely to coincide with the intent of defendant, who, by failing to delineate precisely the controversies to be arbitrated, probably chose broad language for the purpose of extending arbitration to unforeseeable disputes. To construe § 572.09(a) to authorize a preliminary judicial determination of whether the applicant presented an issue referable to arbitration would be to add nonexistent language. Such a construction, in many instances, might be destructive of the purposes of arbitration.

Reversed and remanded for proceedings consistent with this opinion.

---

[18] Minn. St. 1971, § 65B.22, requires all carriers to provide uninsured-motorist coverage but is silent as to any provisions for the arbitration of disputes. Section 65B.22 was repealed by L. 1974, c. 408, § 33, and replaced by § 65B.49, subd. 4, which is part of the Minnesota No-fault Automobile Insurance Act.