Sheung KWONG, Petitioner, Appellant,

v.

DEPOSITORS INSURANCE
COMPANY, Respondent.

No. C5–00–242.

Supreme Court of Minnesota.

May 24, 2001.

Paul Frederick McEllistrem, Minneapolis, for appellant.

Timothy Paul Jung, Minneapolis, for respondent.

## OPINION

. BLATZ, Chief Justice.

Appellant Sheung Kwong seeks review of a court of appeals decision answering a certified question from the Hennepin County District Court. The certified question arose from Kwong's suit against his insurer, respondent Depositors Insurance Company, following Depositors' denial of Kwong's claim for uninsured motorists benefits. The court of appeals was asked to decide whether a clause in Kwong's automobile insurance policy, providing that Depositors will not be bound by any judgment for damages arising out of a suit between an insured and an uninsured motorist, is enforceable against Kwong where neither the uninsured motorists nor Depositors participated in the underlying suit. The court of appeals concluded that the clause was enforceable and thus Depositors was not required, as a matter of law, to pay Kwong uninsured motorist (UM) benefits based on the default judgment Kwong obtained against the at-fault uninsured motorists in his automobile accident. We reverse, answering the certified question from the district court in the negative and holding that the clause relied on by Depositors to deny payment of UM benefits to Kwong violates the public policy behind the No–Fault Act and is therefore unenforceable.

Kwong was injured in an automobile accident involving three vehicles. An uninsured automobile struck Kwong's automobile as the uninsured automobile veered to avoid hitting a van that had failed to yield the right-of-way. The van was insured. By letter, Kwong notified Depositors of a potential UM claim. In response, Depositors wrote a letter to Kwong stating that it did not anticipate exposure to a UM claim because the driver of the insured van was primarily at fault.[1]

Kwong filed suit in Hennepin County District Court against the driver of the insured van and its owner (insured motorists) and later added claims against the driver of the uninsured automobile and its owner (uninsured motorists). Kwong then notified Depositors that he had commenced a lawsuit against the uninsured motorists. The uninsured motorists did not answer the complaint, and Depositors did not intervene.

Kwong and the insured motorists conducted discovery, including depositions of all drivers involved. Upon completion of discovery, the district court ordered the parties to attend nonbinding arbitration.[2] Prior to arbitration, Kwong settled with the insured motorists for $6,500 on a *Pierringer* release.[3] The action continued to

---

1. In this letter, Depositors noted that under joint and several liability the insured motorists need only be shown to be 15% responsible for the accident in order to be held responsible for 100% of the damages. Because Depositors believed that no reasonable jury would find the insured motorists less than 50% liable, Depositors stated that it did not anticipate exposure to a UM claim.

2. Notice of the arbitration hearing was sent only to the attorneys for Kwong and the insured motorists. Because the uninsured motorists had defaulted, they were not served with notice. *See* Minn. R. Civ. P. 5.01.

3. *See Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963). We have long accepted the use of *Pierringer* releases, in which the injured party settles his claims with some of the defendants, releasing those defendants from further liability and participation in the litigation against the nonsettling defendants. *Frey v. Snelgrove*, 269 N.W.2d 918, 921 (Minn. 1978). Although the negligence of the settling defendants may be presented as evidence in the ongoing litigation, the exposure of the

arbitration against the uninsured motorists, who were not present at the hearing. Following the arbitration hearing, the arbitrator awarded Kwong $30,000 in damages, plus costs. Based on this award, the district court entered a default judgment of $30,653.58 against the uninsured motorists.

Kwong forwarded a copy of the default judgment to Depositors, requesting payment of UM benefits. Depositors denied payment, relying on the following clause in its insurance policy:

> Any judgment for damages arising out of a suit between an "insured" and an uninsured or underinsured motorist is not binding on us.

Kwong then commenced this suit against Depositors, claiming that Depositors' refusal to pay was a breach of the insurance contract and that the clause violated the express language of the No Fault Act requiring payment of UM benefits for damages the insured is legally entitled to recover from an uninsured motorist. *See* Minn.Stat. § 65B.43, subd. 18 (2000). In addition, Kwong claimed that the clause violated the public policy underlying the No–Fault Act. In its answer, Depositors denied that the uninsured driver was at fault in the accident and denied that any judgment for damages arising out of a suit

between Kwong and the uninsured motorists was binding on Depositors.

Kwong moved the district court for summary judgment, arguing that based on his judgment against the uninsured motorists Depositors was obligated to pay his UM claim as a matter of law. The district court denied Kwong's motion for summary judgment and granted Depositor's motion to compel certain discovery responses. Nonetheless, the district court granted Kwong's subsequent motion to certify the following question to the court of appeals pursuant to Minn. R. Civ.App. P. 103.03(i):[4]

> Is a consent to sue clause in a contract for uninsured benefits which provides that "any judgment for damages arising out [of] a suit between an 'insured' and an uninsured or underinsured motorist is not binding on us" enforceable against the insured such that the insured cannot collect uninsured motorist coverage based upon a judgment rendered in a lawsuit in which neither the uninsured motorists nor the uninsured insurer participated? [5]

The court of appeals answered in the affirmative and affirmed the district court's denial of summary judgment. *Kwong v. Depositors Ins. Co.*, 612 N.W.2d 184, 187–88 (Minn.App.2000). In this appeal,

---

settling defendants is fixed by the *Pierringer* release regardless of subsequent determinations of fault. *Id.* at 922.

4. Rule 103.03(i) allows an appeal from an order that denies a motion for summary judgment "if the trial court certifies that the question presented is important and doubtful."

5. Although the district court characterized this policy provision as a "consent to sue" clause, the provision does not include consent to sue language. Instead, the clause provides that Depositors will not be bound by *any* judgment for damages resulting from a suit between an insured and an uninsured or underinsured motorist. For convenience, we

will refer to this provision as the "judgments-not-binding" clause. Because the insurer will not have to honor any judgment the insured obtains against an uninsured motorist, this clause, in practical effect, requires the insured to bring a direct action against the insurer in order to recover UM benefits, but does not expressly instruct the insured to do so. Although the effect of the judgments-not-binding clause is broader than that of a consent to sue clause, the parties rely primarily on consent to sue cases to support their respective positions and we agree that the consent to sue analysis provides a useful framework within which to decide this case.

Kwong requests that we reverse the court of appeals and hold that the judgments-not-binding clause is not enforceable to bar his recovery because it contravenes the No–Fault Act and our precedent.

■ This appeal involves a certified question arising from a denial of summary judgment. As such, this court will review the record to determine whether any genuine issues of material fact exist and whether the law was correctly applied. *Employers Mut. Cas. Co. v. A.C.C.T., Inc.*, 580 N.W.2d 490, 493 (Minn.1998). No relevant fact questions are disputed here, and the question of whether an insurance contract provision is valid and enforceable is a question of law that we review de novo. *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn.1998). We have recognized that so long as an insurance contract does not omit statutorily mandated coverage or otherwise contravene the applicable statutes, the contract governs the insurer's liability. *Am. Nat'l. Prop. & Cas. Co. v. Loren*, 597 N.W.2d 291, 292 (Minn.1999). However, policy terms that conflict with the No–Fault Act will be held invalid. *Malmin v. Minn. Mut. Fire & Cas. Co.*, 552 N.W.2d 723, 725 (Minn.1996).

■ The No–Fault Act requires that all insurance plans in the state provide a statutorily prescribed minimum of UM coverage, which is defined as "coverage for the protection of persons insured under that coverage who are *legally entitled* to recover damages for bodily injury from owners or operators of uninsured motor vehicles * * *." Minn.Stat. § 65B.43, subd. 18 (2000) (emphasis added). Essentially, the UM insurer must pay its insured the amount in damages that the uninsured motorist is legally obligated to pay, up to the limits of the UM coverage in the insurance contract. Depositors' contract of insurance with Kwong provided for $50,000 of UM coverage. The issue here is whether the judgments-not-binding clause so conflicts with the statutory obligation to pay UM benefits that it is invalid and unenforceable.

Depositors defends its judgments-not-binding clause on the basis that it does not deprive an insured of mandated UM benefits, but merely sets forth a procedure—consistent with the No–Fault Act—to be followed for establishing the uninsured motorist's liability and damages. Kwong responds that the clause creates an unnecessary barrier to recovery of mandatory UM benefits and allows Depositors to dictate the method of processing a UM claim in a way that can require insureds to bring multiple lawsuits. Kwong argues that such forced duplicative litigation violates the principles of the No–Fault Act and will result in prejudice, wasted resources, and an unfair risk of inconsistent judgments.

We addressed the tension between insurance contract provisions that force duplication of litigation and the policy underlying the No–Fault Act in *Malmin v. Minnesota Mutual Fire & Casualty Co.*, 552 N.W.2d at 727–28. In *Malmin*, the insured obtained a judgment against an underinsured motorist (UIM) and then sought UIM benefits from his insurer. *Id.* at 724. The insurer denied coverage because the insured had not complied with provisions in the insurance policy that required notice to the insurer of a potential UIM claim and the insurer's written consent to sue the tortfeasor. *Id.* The district court denied the insured's motion for summary judgment, concluding that the insurer was not bound by the insured's judgment against the underinsured motorist because the insured had failed to comply with the notice and consent provisions of the insurance contract. *Id.* at 725. This result would have forced the insured to relitigate his underlying personal injury

action—this time against his own insurer—in order to obtain statutorily mandated UIM benefits. However, the district court certified the consent to sue issue to the court of appeals. The court of appeals held the consent to sue clause void and unenforceable under the No–Fault Act. *Malmin,* 552 N.W.2d at 725. We agreed, reasoning that "forcing the insured to relitigate his or her claim against a tortfeasor simply because the insured neglected to obtain written consent from the insurer violates the public policy behind our No–Fault Act and erects unnecessary barriers to the insured's recovery of UIM benefits." *Malmin,* 552 N.W.2d at 728.

Depositors contends, and the court of appeals agreed, that the rationale of *Malmin* does not apply here because this case involves UM benefits, and unlike UIM cases, there is no forced duplication of litigation in UM cases. In UIM cases, the tortfeasor is not considered an underinsured motorist unless liability and damages in excess of the tortfeasor's liability coverage are established. This generally requires the injured insured to first sue the underinsured motorist. *See Employers Mut. Cos. v. Nordstrom,* 495 N.W.2d 855, 857 (Minn.1993) (holding that recovery from the tortfeasor's insurer is a condition precedent to a claim for UIM benefits). In contrast, an insured can establish entitlement to UM benefits just by suing his insurer, without making a claim directly against the uninsured motorist. *Id.* at 857–58 n. 4. Duplicate litigation is therefore unnecessary, according to Depositors. Kwong opted to sue only the uninsured motorists and thus, Depositors contends, the necessity of multiple lawsuits results from Kwong's decision rather than from

the legal requirement for recovery that existed in *Malmin.*[6]

We recognize that there are differences between UM and UIM coverages, but despite these differences, the policy concerns addressed in *Malmin* apply here. In *Malmin,* we noted that "the majority of state courts considering this issue have refused to enforce consent to sue clauses against insureds with otherwise valid claims for UIM benefits." 552 N.W.2d at 727. Several of the cases we relied on applied the same reasoning to bar such clauses in cases involving UM insurance. *Id.* at 727–28. We conclude that regardless of whether applied to a UM or a UIM claim, consent to sue clauses are contrary to public policy because they present arbitrary barriers to the recovery of statutorily mandated benefits.

In the instant case, the judgments-not-binding clause erects a barrier to the insured's recovery of UM benefits that contradicts recognized No–Fault Act principles of providing prompt payment of benefits to injured parties and easing the burden of litigation. *See* Minn.Stat. § 65B.42 (2000). Kwong notified Depositors of the potential UM claim, sued the insured and uninsured motorists, notified Depositors of the commencement of litigation, obtained a valid default judgment against the uninsured motorists, and presented it to Depositors for payment. In barring the conclusiveness of this valid judgment as against Depositors, the judgments-not-binding clause delays the payment of UM benefits and forces Kwong to relitigate issues that have already been established in the underlying litigation, contrary to the purposes of the No–Fault Act.

---

**6.** Notably, the clause at issue here purports to deny the conclusiveness of any judgment in a suit between the insured and either an uninsured *or an underinsured motorist.* Deposi- tors conceded at oral argument that *Malmin* precludes enforcement of Depositors' judg- ments-not-binding clause in a UIM context.

Notwithstanding the conflict between the clause and the No–Fault Act, we recognize, as we did in *Malmin*, that the insurer has some legitimate concerns about protecting its interests. Those interests can be adequately safeguarded by requiring that the insurer "receive notice of, and an opportunity to participate in, the insured's personal injury claim * * *." *Malmin*, 552 N.W.2d at 728. Here, it is undisputed that Depositors received notice and an opportunity to intervene in the lawsuit against the uninsured motorists. Depositors elected not to participate.[7] Because the judgments-not-binding clause violates the policy underlying the No–Fault Act, and Depositors had the opportunity to protect its interests, we hold that the judgments-not-binding clause cannot be enforced to prevent Kwong's recovery of UM benefits based on his judgment against the uninsured motorists.

Contrary to the court of appeals' conclusion, *State Farm Mutual Automobile Insurance Co. v. Galloway*, 373 N.W.2d 301 (Minn.1985), does not require a different result. In *Galloway*, this court was presented with a "consent to settlement" clause that denied UM benefits to an insured who had settled with the insured tortfeasors without her insurer's consent. *Id.* at 303. The trial court held, and the court of appeals agreed, that the consent to settlement clause violated the No–Fault Act and could not be enforced to deny Galloway's recovery of UM benefits. *Gal-*

*loway*, 373 N.W.2d at 303–04. In contrast, the insurer defended the clause as a valid means of protecting its subrogation rights. *Id.* We held that the clause was invalid because the UM carrier's "inchoate subrogation right must yield to the [insured's] right to control [the] personal injury action * * *." *Id.* at 306. We therefore concluded that the insured may settle with the insured tortfeasor without the insurer's consent and still seek UM benefits. *Id.* Despite the factual and procedural differences between *Galloway* and this case, our opinion in *Galloway* and our holding here both reflect our general concern that insureds be allowed to maintain control over their own claims within the statutory framework of the No–Fault Act.

Depositors' argument is not based, however, on this holding. Instead, Depositors argues that our focus should be on other language in *Galloway* that recognized the validity of a consent to settlement clause as applied to the UM claimant's settlement with an *uninsured* motorist. This language was fueled by our concern that the UM insurer not be subject to an unfair disadvantage by the insured's independent settlement with the uninsured motorists. *Galloway*, 373 N.W.2d at 306–07. That concern is not present, however, in the circumstances we face here. This case involves a judgment against the uninsured motorist, not a settlement, and thus the subrogation rights of the insurer are not at risk. Furthermore, providing Depositors

---

7. We reject Depositors' argument that requiring the UM insurer to intervene in the insured's lawsuit against the uninsured tortfeasor would be impracticable. Depositors contends that intervention is not an adequate solution because it would create "a wave of pro se litigants" that would become an "unpredictable factor" in the litigation. Adopting this argument, the district court noted that by intervening in the suit against the uninsured motorist, the insurer would be placed in the "untenable position" of having

adverse interests to both the insured and the uninsured motorists. Depositors, however, does not adequately explain how the situation will be different if the judgments-not-binding clause is enforceable, given that the uninsured motorist might still be named as a defendant in a lawsuit brought directly against the insurer. This involvement of the uninsured motorist would foster the same concerns that Depositors raises in its arguments opposing intervention.

with notice and the opportunity to intervene satisfies any general concern we expressed in *Galloway* for ensuring that the insurer's interests are adequately protected.

■ Finally, we disagree with the court of appeals' reliance on dicta in *Galloway* for its conclusion that Kwong was required to proceed in one of three specified ways to recover claims against both an insured and uninsured tortfeasor and failed to do so. While we stated that "[i]n deciding how best to proceed with her personal injury lawsuit and her uninsured motorist arbitration claim, [the insured] had several alternatives," *id.* at 304, the subsequent recitation of three alternatives was not intended to be an exclusive list of the avenues to recovery. Thus, *Galloway* does not foreclose Kwong from proceeding as he did to recover UM benefits.

Accordingly, in recognition of the policy underlying the No Fault Act, we hold that a judgments-not-binding clause will not be enforced to allow a UM insurer to avoid payment of damages established by a valid judgment against uninsured motorists where the UM insurer has received notice of and an opportunity to intervene in the suit against the uninsured motorists. This matter is remanded so that the district court may proceed in accordance with this decision.

Reversed and remanded; certified question answered in the negative.