Ronald Ralph GERDESMEIER,
et al., Appellants,

v.

Jeffry Marc SUTHERLAND,
Defendant,

Illinois Farmers Insurance Company,
applicant for intervention,
Respondent,

and

Ronald Ralph Gerdesmeier,
et al., Appellants,

v.

Illinois Farmers Insurance
Company, Respondent.

No. A03–07.

Supreme Court of Minnesota.

Dec. 16, 2004.

Thomas A. Klint, William J. Marshall, Gary T. LaFleur, Abcock, Neilson, Mannella, LaFleur & Klint, Anoka, MN, for Appellant.

Paul W. Godfrey, Votel, Anderson & McEachron, St. Paul, MN, for Respondent.

Heard, considered, and decided by the court en banc.

## OPINION

HANSON, Justice.

Appellant Ronald Gerdesmeier was injured by an uninsured motorist. After submitting an uninsured motorist (UM) claim with his insurer, Respondent Illinois Farmers Insurance Company (Farmers), Gerdesmeier and his wife, Mary, brought a tort action against the uninsured motorist. When default judgment was entered in favor of the Gerdesmeiers in the tort action, they presented the judgment to Farmers and demanded payment. Farmers declined and, for the first time, demanded arbitration of the UM claim. The Gerdesmeiers brought suit on the policy and the district court granted judgment on the pleadings for the Gerdesmeiers, holding that Farmers had notice of and an opportunity to intervene in the tort action and that its failure to do so prevented it from compelling arbitration. The court of appeals reversed, holding that the arbitration clause required the parties to arbitrate the UM claim despite the default judgment in the tort action. *Gerdesmeier v. Sutherland,* No. A03–7, 2003 WL 22999402 at *1–*3 (Minn.App. Dec. 23, 2003). We reverse the decision of the court of appeals and reinstate the judgment in favor of the Gerdesmeiers.

On December 6, 2000, Ronald Gerdesmeier was injured when an automobile driven by Jeffry Marc Sutherland struck the automobile in which Gerdesmeier and his wife, Mary, were riding. The Gerdesmeiers' automobile insurance with Farmers included $100,000 of UM coverage. Counsel to Sutherland's mother informed Gerdesmeiers' counsel that Sutherland was uninsured. In the months following the accident, the Gerdesmeiers sent several letters to Farmers, informing it of Sutherland's uninsured status and their intention to assert a UM claim. Farmers sent a letter to the Gerdesmeiers requesting that all further correspondence be sent to a named claims adjuster. The Gerdesmeiers sent the claims adjuster all requested documents, including medical and accident reports.

On December 3, 2001, approximately 1 year after the accident, the Gerdesmeiers sued Sutherland. The Gerdesmeiers immediately informed Farmers of this suit and of Sutherland's status as an uninsured motorist. On July 9, 2002, after Sutherland had defaulted, the Gerdesmeiers also notified Farmers that they would move for default judgment against Sutherland.[1] Farmers did not intervene in the action against Sutherland, did not oppose the motion for default judgment against Sutherland, and did not demand arbitration. On September 11, 2002, the district court granted default judgment in favor of the Gerdesmeiers and against Sutherland for $118,934.24.

The Gerdesmeiers sent Farmers a copy of the default judgment against Sutherland and requested payment up to the UM policy limit of $100,000. Farmers refused, asserting that it was not bound by the

---

**1.** Although Farmers argues that it never received notice of this action or of the motion for default judgment, the district court found that Farmers received notice of the action against Sutherland and of the motion for default judgment. The court of appeals affirmed the district court's finding and Farm-ers did not seek review. *Gerdesmeier,* 2003 WL 22999402 at *4. For purposes of this appeal, therefore, it will be assumed that Farmers received notice of the action against Sutherland and of the Gerdesmeiers' motion for default judgment.

default judgment because the Gerdesmeiers did not submit the claim to mandatory arbitration. The Gerdesmeiers sued Farmers and then moved for judgment on the pleadings. Farmers defended that it was not bound by the default judgment and demanded arbitration. Farmers also moved to intervene in the Sutherland action and to set aside the default judgment against Sutherland. The district court denied both of Farmers' motions and granted judgment on the pleadings to the Gerdesmeiers for $100,000.

The court of appeals affirmed the denial of Farmers' motions to intervene and to vacate the default judgment. *Gerdesmeier*, 2003 WL 22999402 at *4–*5. But the court reversed the judgment in favor of the Gerdesmeiers, holding that the Gerdesmeiers were bound by the arbitration clause in the insurance policy and should have demanded arbitration to determine the UM claim. *Id.* at *3. The Gerdesmeiers sought further review to consider (1) whether Farmers is entitled to enforce the UM arbitration clause after the insured already has obtained judgment against the uninsured motorist or (2) whether Farmers waived its right to compel arbitration under the UM policy by not demanding arbitration until after default judgment was obtained against the uninsured motorist.

The court of appeals rested its decision on this court's holding in *Dunshee v. State Farm Mutual Automobile Insurance Co.*, 303 Minn. 473, 228 N.W.2d 567 (1975), and the Uniform Arbitration Act, Minn.Stat. § 572.08 (2002). In *Dunshee*, the issue was whether the scope of the arbitration of

a UM claim should be decided by the arbitrator or the court. 303 Minn. at 477, 228 N.W.2d at 570. We held that the Uniform Arbitration Act applies to disputes involving arbitration provisions in UM policies. *Dunshee*, 303 Minn. at 483, 228 N.W.2d at 573. We concluded that the legislative intent, as reflected in the Uniform Arbitration Act, was to "discourage litigation and to foster speedy, informal, and relatively inexpensive procedures for the voluntary resolution of dispute[s]," without the interference of the court. *Dunshee*, 303 Minn. at 481–82, 228 N.W.2d at 572–73. We concluded that questions about the scope of arbitration of a UM claim were to be decided by the arbitrator. *Id.* at 482, 228 N.W.2d at 572.

Implicit in our *Dunshee* decision was the conclusion that arbitration clauses in UM policies are valid and enforceable. Thus, the court of appeals relied on *Dunshee* to conclude that Farmers' arbitration clause was valid and enforceable. *Gerdesmeier*, 2003 WL 22999402 at *2–3. But the court of appeals went beyond *Dunshee* when it held the arbitration provision enforceable even after the insured had obtained judgment against the uninsured motorist. It stated that

> [a]llowing the insured to obtain and then enforce a default judgment against insurers when the policy provides for arbitration would allow insureds to circumvent the mandatory arbitration provisions.

*Id.* at *3.[2]

The Gerdesmeiers argue that the court of appeals improperly relied on *Dun-*

---

2. Although the parties have argued the issues as though arbitration of this UM claim was mandatory, this conclusion is not completely clear because arbitration is discussed in two sections of the policy and one of those sections limits mandatory arbitration to UM claims that are $5,000 or less. In *Illinois*

*Farmers Insurance Co. v. Glass Service Co.*, 683 N.W.2d 792, 798 (Minn.2004), we construed an identical policy provision as limiting mandatory arbitration to all claims of $10,000 or less, to be consistent with the $10,000 limit in section 65B.525 of the No-Fault Act. Because the parties have not ar-

*shee* because *Dunshee* addressed only the issue of the general validity of a UM arbitration provision and did not address the conflict between that provision and a judgment obtained by the insured against the uninsured motorist. As to that conflict, the Gerdesmeiers argue that this case is controlled by *Malmin v. Minnesota Mutual Fire & Casualty Co.,* 552 N.W.2d 723 (Minn.1996), and *Kwong v. Depositors Insurance Co.,* 627 N.W.2d 52 (Minn.2001).

In *Malmin,* we held that a consent-to-sue clause in underinsured motorist insurance (UIM) was invalid and the insurance company was bound by the default judgment obtained against an underinsured motorist. 552 N.W.2d at 727–28. We said that

> forcing the insured to relitigate his or her claim against a tortfeasor simply because the insured neglected to obtain written consent from the insurer violates the public policy behind our No–Fault Act and erects unnecessary barriers to the insured's recovery of UIM benefits.

*Id.* at 728. We concluded that a requirement that a victim of an automobile accident relitigate a UIM claim in arbitration after having already obtained a judgment against the underinsured motorist would be contrary to the purposes of the No–Fault Act to provide prompt payment, to speed claims administration, and to ease the burden of litigation. *Malmin,* 552 N.W.2d at 728.

In *Kwong,* we held that a judgments-not-binding clause in UM insurance was not enforceable where the insured already had obtained a default judgment against the uninsured motorist. *Kwong,* 627 N.W.2d at 58. We reasoned as follows:

> [T]he judgments-not-binding clause erects a barrier to the insured's recov-

ery of UM benefits that contradicts recognized No–Fault Act principles of providing prompt payment of benefits to injured parties and easing the burden of litigation. *See* Minn.Stat. § 65B.42 (2000). Kwong notified Depositors of the potential UM claim, sued the insured and uninsured motorists, notified Depositors of the commencement of litigation, obtained a valid default judgment against the uninsured motorists, and presented it to Depositors for payment. In barring the conclusiveness of this valid judgment as against Depositors, the judgments-not-binding clause delays the payment of UM benefits and forces Kwong to relitigate issues that have already been established in the underlying litigation, contrary to the purposes of the No–Fault Act.

*Id.* at 56. Thus, although the court of appeals determined that under *Dunshee* the arbitration clause was valid, the Gerdesmeiers argue that the clause's effect, as applied to the present facts, is to erect an unreasonable barrier to the insured's prompt recovery of UM benefits and require the insured to relitigate issues already established in the tort action.

■ We agree with the Gerdesmeiers that the purposes of the No–Fault Act preclude enforcement of the arbitration clause under these facts, where its use would delay payment to the victim and require relitigation of liability and damage issues already established by the judgment against Sutherland. We acknowledge that this case is more complex than *Malmin* and *Kwong,* because the UM arbitration clause is not invalid for all purposes and could be enforced if arbitration had been demanded before default judgment was obtained. But we hold that an arbitration clause will not be enforced to allow a UM

gued otherwise, we will assume for this decision that the policy makes arbitration manda-

tory even where, as here, the claim exceeds $10,000.

insurer to avoid payment of damages established by a valid judgment against the uninsured motorist where, as here, the UM insurer has received notice of and had opportunity to intervene in the suit against the uninsured motorist.

At oral argument, Farmers raised a new argument, based essentially on collateral estoppel. In general, issues not raised below will not be considered on appeal. *Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401, 403 (Minn.2000). But in *Oanes*, we addressed a newly raised argument because of the case's unusual procedural posture, there were no disputed facts that affected the question presented, and neither party was disadvantaged by the absence of a prior court's ruling on the issue. *Id.* We concluded there, as we do here, that it is appropriate to address the argument even though the issue is not decisive of the case on the merits. *Id.*

Farmers asserted that, under Minnesota case law, an insured has been permitted to compel arbitration with its UM or UIM insurer even after having first obtained an unfavorable judgment in a suit with the uninsured or underinsured motorist (unfavorable meaning either finding no liability or assessing damages below the liability limits of the other motorist's insurance).

Farmers argued that the rationale of those cases, that no collateral estoppel effect will be given to the judgment unfavorable to the insured, applies equally to preclude giving collateral estoppel effect to a judgment favorable to the insured. Thus, Farmers argued, in order to defeat its right to compel the Gerdesmeiers to arbitrate their UM claim, we must overrule our case law recognizing the insured's right to compel UM or UIM arbitration after receiving an unfavorable judgment in litigation with the other motorist. To support that position, Farmers cited *Costello v. Aetna Casualty & Surety Co.*, 472 N.W.2d 324 (Minn.1991), *Liberty Mutual Insurance Co. v. American Family Mutual Insurance Co.*, 463 N.W.2d 750 (Minn. 1990), *National Indemnity Co. v. Farm Bureau Mutual Insurance Co.*, 348 N.W.2d 748 (Minn.1984), and *Milwaukee Mutual Insurance Co. v. Currier*, 310 Minn. 81, 245 N.W.2d 248 (1976).

Although each of these cases is distinguishable,[3] our fundamental disagreement with Farmers' argument is that the rationale in *Malmin* and *Kwong*, which we apply here, is not based on the doctrine of collateral estoppel but on the policies underlying the No–Fault Act. Thus, neither *Malmin* nor *Kwong* relied on collateral

---

**3.** *Costello* is actually contrary to Farmers' argument because it held that collateral estoppel did prevent the insured from compelling arbitration of his underinsured motorist claim where he had obtained judgment against the other motorist for less than the liability limits of the other motorist's policy. *Costello,* 472 N.W.2d at 326–27. *Liberty Mutual* involved complex facts that included the assignment of the uninsured/underinsured motorist claim by the insured to the other motorist's liability insurer, subrogation between an insured and an underinsured, and the effect of a settlement between two insurers. *Liberty Mut.,* 463 N.W.2d at 753, 757–58. *National Indemnity* involved two insurers litigating issues of indemnity where the injured insured had already been compensated, and the arbitration

was not contractual but was statutorily mandated. *Nat'l Indem.,* 348 N.W.2d at 749–50. And *Currier* involved an accident that occurred before the No–Fault Act took effect and thus reflects different policy considerations. Although *Currier* held that an insured had the right to compel UM arbitration even after a jury found the insured to be 65% at fault for the accident, we did so because the tort action had been initiated by the uninsured motorist, not the insured, and the insurer informed the insured that it would not participate in the action against the uninsured motorist and would not be bound by the outcome because the insured's claim was subject to arbitration. *Currier,* 310 Minn. at 82–86, 245 N.W.2d at 249–51.

estoppel as being the legal basis on which the UM or UIM insurer was bound by the liability and damages established in the judgment. To the contrary, in *Malmin* we quoted with approval this statement from *Employers Mutual Companies v. Nordstrom*, 495 N.W.2d 855, 858–59 (Minn. 1993):

> The tort judgment establishes conclusively the damages to which the claimant is "legally entitled"; if such damages exceed the tort insurance limits, the excess is payable by the underinsurer to the extent of its coverage without the need for arbitration. The underinsurer pays, *not because it is estopped by the judgment,* but because it has contractually agreed to pay the judgment less the tort liability insurance recovery.

*Malmin*, 552 N.W.2d at 726. And in *Kwong*, we held that the UM insurer was required to pay the damages established by a valid tort judgment because of the policies of the No–Fault Act, making no mention of collateral estoppel. *Kwong*, 627 N.W.2d at 58.

We recognize that, under our decision, a UM insurer is required to pay on the basis of a favorable tort judgment even though the UM insurer might not be able to avoid arbitration of a UM claim on the basis of an unfavorable tort judgment. But a favorable tort judgment is binding on the UM insurer not because of collateral estoppel, but because of the overriding policies of the No–Fault Act. The UM insurer may not be able to take advantage of an unfavorable tort judgment because the policies underlying the No–Fault Act generally do not run to the insurer's benefit.

██ Our decision does not leave the UM insurer without the ability to protect itself. As in *Kwong*, we have conditioned our ruling on the fact that Farmers' interests were adequately safeguarded because Farmers received notice of the tort action and had the opportunity to intervene. If a UM insurer who has received notice of the tort action is concerned that the insured will orchestrate the UM claim to avoid arbitration and maximize the determination of damages in a tort action, the insurer can intervene in that action or initiate arbitration. Farmers did neither. Instead, it remained silent for more than 9 months between the commencement of the tort action and the entry of default judgment. In fact, Farmers did not seek to intervene or demand arbitration until more than 3 months after the tort judgment was entered.

We hold that the UM arbitration provisions will not be enforced to allow Farmers to avoid paying damages established by the tort judgment where Farmers received notice of and had an opportunity to intervene in the tort action.

Reversed.

ANDERSON, G. BARRY, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.